## Tennessee Lumber Company, Plff. in Err., v. David Garrison et al.

A contract for the sale of "a nice lot of gum lumber, of the kind used by manufacturers, for molding," etc., and like a sample furnished, is not, even before the act of April 13, 1887, fulfilled by the delivery of gum lumber of inferior qualities known as "culls" and "No. 2" and not used by manufacturers for molding, etc.

(Argued March 23, 1888. Decided April 2, 1888.)

January Term, 1888, No. 184, E. D., before PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Error to Common Pleas No. 3 of Philadelphia County to review a judgment for the defendants discharging a rule for judgment for want of a sufficient affidavit of defense in an action of assumpsit, June term, 1887, No. 3. Affirmed.

This was an action by the Tennessee Lumber Company, a corporation existing under the laws of Ohio, against David Garrison & George C. Reukauff, trading as Hall & Garrison, to recover $325.97 for gum lumber sold and delivered, less $80.88, a credit which plaintiff allowed defendants for freight paid by them on said lumber. The copy filed by the plaintiff of the charges for said gum lumber in plaintiff's book of original entries, and also the aforesaid credit, was as follows:

NOTE.—For implied warranty from sale by sample, see note to Sidney School Furniture Co. v. School District, 4 Sad. Rep. 35.

Cincinnati, Ohio.

Hall & Garrison.
  Bought of The Tennessee Lumber Company.
  1887.                                                        .Dr.
Feby. 19.   On car 2570, F. & P. M.
  472 ft. 2 in.
  4299 ft. ½ in.
  3242 ft. 1 in.—8013 ft. Log Run Gum, $35 ...... $280 45
                    2023 ft. 1½ ins. Log Run Gum,
                    $22.50 ..... ..... ..... ....... 45 52
                                                    ─────────
  Brought forward ..... . ..................... $325 97
                                                    ─────────

The plaintiffs allow defendants credit for cash paid
  freight on the above........................ 80 88
                                                    ─────────
                                                    $245 09

The defendants, on June 25, 1887, filed an affidavit of defense as follows:

"L. R. Fletcher, being duly sworn according to law, deposes and says: That he is attorney for the defendants in the above-entitled cause, and is authorized to make defense for them, and that they have a just defense to the plaintiff's claim of the following character:

"That suit is brought for lumber sold by the plaintiff to defendants, amounting in price, after deducting freight charges as appears by the copy filed, to $245.09. Deponent is informed and believes that the said purchase of lumber was by letter; that defendants, on January 26, 1887, wrote plaintiff asking if it had for sale any of the kind of lumber mentioned in the copy filed and asking it to send a sample; that plaintiff replied that it could furnish the defendants with the lumber desired, and of the quality of a sample that it would forward to defendants; that the plaintiff forwarded a sample, and the defendants then ordered the quantity of said lumber mentioned in the copy filed, of the same quality as the said sample; that plaintiff then shipped to defendants the said quantity of lumber, but it was of a grade far inferior in quality to the said sample, and a considerable portion of it consisted of what is known as 'culls' (inferior quality); that the said sample was of the first quality;

that the defendants immediately notified the plaintiff that the said lumber was not of the kind or quality that they had ordered and that they would not accept it, and ordered the plaintiff to remove it.

"All of which deponent says the defendants will prove on the trial of this case."

June 29, 1887, plaintiff entered a rule on defendants to show cause why judgment should not be entered for want of a sufficient affidavit of defense.

July 2, 1887, the defendants filed another affidavit of defense as follows:

George C. Reukauft, one of the defendants, being duly affirmed according to law, deposes and says: That he has a just and legal defense to the plaintiff's claim of the following nature and character, *viz.*: That suit is brought for $325.97, the price of 10,036 feet of gum lumber delivered by plaintiff to defendants, as appears by the copy filed; that the contract for the purchase of said lumber was by letters, of which the following are correct copies; that on January 26, 1887, the defendants wrote the plaintiff the following letter in regard to said lumber:

Philadelphia, January 26, 1887.
Tennessee Lumber Company, Cincinnati.

Gentlemen: Have you any dry 4–4, 5–4, or 6–4 gum wood on hand, and what is your price delivered to us in Philadelphia? As there are so many kinds of this wood will you kindly forward us a small sample, by mail, of what you have? An early reply will oblige. Yours truly,
Hall & Garrison.

To this letter the plaintiff replied to the defendants as follows:

Cincinnati, January 28, 1887.
Messrs. Hall & Garrison, 1126 Washington Avenue, Philadelphia, Pa.

Dear Sirs: Your favor of the 26th inst. is received. We have a nice lot of gum lumber of the kind used by manufacturers for molding, etc. It is the sweet gum species; we send you a small piece by mail. It is called yellow gum. We have 5,000 feet

4–4, 14,000 feet 6–4, 2,000 feet 8–4; also some 1–2 and 1–4, all seasoned, price, f. o. c. Philadelphia, $35 per M. We offer you this or a car load, subject to its being unsold when your order is received, as dry lumber is in demand. We would advise you to place your order at an early date. Can you use some good dry poplar, good 2ds, $18 f. o. c. here; 3ds, $14? We have a large lot of well-seasoned stock, and shall be pleased to have your order, which will receive prompt attention.

Yours truly,<br>Tennessee Lumber Company,<br>By E. D. Albry, Pres.

Upon receipt by the defendants of said letter, they telegraphed the plaintiff as follows:

Tennessee Lumber Company, Cincinnati, O.
What is the price of 1–4 and 1–2 in. gum?

Hall & Garrison.

In answer to this telegram the plaintiff telegraphed the defendants the price as set forth in said copy filed; the defendants afterwards, on the 31st of January, wrote the plaintiff a letter of which the following is a copy:

Tennessee Lumber Company, Cincinnati, O.
Gentlemen: Your letter and telegram to hand and noted. Please ship us at once of the gum wood 5,000 feet of 1 in.; 2,000 feet of 1½ in.; 2,000 feet of 2 in.; 2,000 feet of ½ in. If you cannot put it all on one car, reduce the order in the 1 in. Let us know when you will ship and get off as quick as possible.

Hall & Garrison.

The plaintiff afterwards shipped the said lumber in the copy filed to the defendants; and they, immediately upon receipt of it, made examination of it, and found it to be of a different kind and quality from what it had been represented by the plaintiff, and then immediately wrote the plaintiff the letter of which the following is a copy:

Philadelphia, March 18, 1887.

Tennessee Lumber Company, Cincinnati, O.
Gentlemen: Your car No. 2570 of gum wood is received, and we found it entirely too poor for our purpose. There is 5,990

feet of culls and the balance is all No. 2, and all the ½ in. is green and very light in color, and is nothing like your sample sent us. We are very sorry we cannot use it, as we are very much in need of a fine lot of gum. Please refer to your letter of January 28. From your description of it we placed our order; as you will see it is no fault of ours and we shall be obliged to hold it subject to your order, and we wish you would kindly have it removed as soon as possible as our room is very limited for storing lumber.　　　Hall & Garrison.

To this letter the defendants received the following reply:

Cincinnati, March 15, 1887.

Hall & Garrison, Philadelphia.

Gents: Yours of 11th at hand; we are sorry the gum does not give satisfaction. We thought it a fair car load for gum. Could you not make some use of it? We have requested Mr. A. F. Schada, of your city, to call on you; and any arrangements he may make with you will be agreed to by us, but we hope you will keep it. Are you in want of any other kind of lumber, as we would like to send you some that would suit?

Yours truly,

Tennessee Lumber Company,

J. H. Moore, Sec'y.

During March, 1887, the said A. F. Schada called twice on defendants, and both times they informed him that they could not use the said lumber; that it was not suited for the purposes for which it was sold to be used for, and was not in any respect as it had been represented, and that they wanted the plaintiff to remove it from their yard; that the defendants received from the plaintiff the sample referred to in the plaintiff's letter of January 28. The said sample was "a nice" dry piece of what is known as "No. 1 gum lumber, of the kind used by the manufacturers for molding," etc., was dry and of good grain and was in every way suited for the purpose for which the lumber to be purchased was to be used. Gum lumber used by manufacturers for moldings is of the same kind as the said sample is herein described.

The lumber shipped to the defendants and sought to be recovered for was not of the kind used by manufacturers for moldings, etc., was green and not seasoned, of poor grain and bad

color, and inferior quality, and was in no respect like the sample or as it was represented to be; and 5,990 feet of it were what is known in the trade as "culls" (the most inferior quality) and the remaining number of feet was what is known as No. 2, or second grade lumber. The defendants are manufacturers of moldings for picture frames, furniture, etc., and the said lumber was to be used for moldings, and this the plaintiff knew. All of the statements made in the said letters written by the defendants are true. The defendants paid for the plaintiff $80.88, the amount of freight charge on said lumber, which said amount the defendants claim from the plaintiff. The said lumber is now in the said defendants' yard subject to plaintiff's order.

All of which the defendants will prove on the trial of the cause.

The rule for judgment was argued, and the court below allowed a further supplemental affidavit of defense, which the defendants filed November 19, 1887, as follows:

George C. Reukauff, one of the defendants, being duly affirmed according to law, deposes and says: That the sample of gum wood referred to in the original affidavit filed by him in the above-entitled cause was received from the plaintiff by the defendants prior to the 31st day of January, 1887, and before they ordered the said lumber by the letter of that date; that the lumber ordered and delivered to defendants was to be of the quality of said sample, and that it was agreed by and between the plaintiff and defendants that it should be of that quality; and that it was to be used for moldings for picture frames, etc., but that it was of an inferior quality, as mentioned in the original affidavit. All of which defendants will prove on the trial.

The court below discharged the rule for judgment for want of a sufficient affidavit of defense, and this was assigned as error.

*Francis E. Bucher,* for plaintiff in error.—The sale and delivery of the lumber having been made prior to the act of April 13, 1887, whereby sales by sample imply a warranty of quality, the law as it was before the act governs this case. Before that act the law, as established in Pennsylvania by a long line of decisions, was that in the absence of fraud, a sale by sample did not imply a warranty that the goods delivered should be of the same

quality as the sample; it becomes a guaranty only that the articles to be delivered shall follow its kind and be simply merchantable, provided there be no special or express stipulation or agreement warranting the quality.   The rule was applied to canned corn, Boyd v. Wilson, 83 Pa. 319, 24 Am. Rep. 176; to window shade rollers, Coulston v. City Nat. Bank, 4 W. N. C. 297; to lumber, Sanger v. Johnston, Supreme Court, E. D. Pa. No. 207, Jan. T. 1883, MS.; and to iron ore, West Republic Min. Co. v. Jones, 15 W. N. C. 491.

The statements by plaintiff, found in the letters or correspondence set out by the defense as constituting the contract for the sale of the lumber, cannot be taken to constitute a warranty of the quality.   Fraley v. Bispham, 10 Pa. 320, 51 Am. Dec. 486; Wetherill v. Neilson, 20 Pa. 448, 59 Am. Dec. 741; Whitaker v. Eastwick, 75 Pa. 229; Ryan v. Ulmer, 16 W. N. C. 121.

The construction of the contract as shown by the letters is for the court.   Hughes v. Westmoreland Coal Co. 14 W. N. C. 463.

The defendants, in the first two affidavits of defense, state positively that the contract for the lumber is to be found in the correspondence set out therein by them.   If this allegation of an agreement to warrant the quality is intended to vary or add to the contract which appears in the said letters, then it is insufficient as a defense; because parol testimony will not be allowed to vary or add to a written contract, there being no allegation of fraud, accident, or mistake.   North & West Branch R. Co. v. Swank, 14 W. N. C. 444.

The introduction of a new defense in the third affidavit of defense, so late in the proceedings, should be closely scrutinized by the court and viewed with suspicion.   Callan v. Lukens, 89 Pa. 134.

The defense is presumed to have put in their affidavits of defense all that they could swear to; no inference or presumption of facts as existing will be made in their favor, and defects will not be supplied by the court.   Blackburn v. Ormsby, 41 Pa. 97; Bardsley v. Delp, 88 Pa. 420; Kaufman v. Cooper Iron Min. Co. 105 Pa. 537; Gould v. Gage, 118 Pa. 559, 12 Atl. 476.

*L. R. Fletcher,* for defendant in error.—There is no doubt that in Pennsylvania, before the act of April 13, 1887, a sale by sample did not imply a warranty of quality; but there was an implied warranty that the thing delivered should correspond in

kind and species with the sample. Borrekins v. Bevan, 3 Rawle, 23, 23 Am. Dec. 85; Kirk v. Nice, 2 Watts, 367; Bradford v. Manly, 13 Mass. 139, 7 Am. Dec. 122; Hastings v. Lovering, 2 Pick. 221, 13 Am. Dec. 420; Osgood v. Lewis, 2 Harr. & G. 495, 18 Am. Dec. 317; Ulrich v. Stohrer, 12 Phila. 199.

The lumber was sold to be used for making moldings, and was not fit for the purpose.

. If a thing is ordered and sold for a particular purpose, there is an implied warranty that it is fit for that purpose. 1 Parsons, Contr. 588; Port Carbon Iron Co. v. Groves, 68 Pa. 149; 5 Bing. 533; 12 Phila. 199; Biddle, Warranties, § 167.

In Parks v. Morris Axe & Tool Co. 4 Lans. 103, it was held that the name of defendants' firm was notice to plaintiffs of the use intended for the steel sold.

Whether or not a thing has been sold for a particular purpose is a question of fact. Biddle, Warranties, § 168.

In cases which hold that a sale by sample does not imply a warranty of fitness, there is an implied warranty of quality; and it is for that reason that the implied warranty of fitness is excluded. Even in a case where there is an implied warranty of quality, a warranty of fitness will be implied, if there is any reason for it, or if it appears to be the intention of the parties. Gardiner v. Gray, 4 Campb. 144; Mody v. Gregson, L. R. 4 Exch. 49; Biddle, Warranties, §§ 162–4.

An affirmation or assurance of a fact and not an expression of a matter of judgment or opinion, during the treaty of sale on the part of the seller, upon which the buyer is intended to, and actually does, rely in making his purchase, is sufficient to constitute a warranty. Warren v. Philadelphia Coal Co. 83 Pa. 440; Jackson v. Wetherill, 7 Serg. & R. 481; Biddle, Warranties, § 35.

PER CURIAM:
Judgment affirmed.