JOHN T. OLIVER *vs.* JAMES BAILEY, and another.

Sagadahoc. Opinion December 13, 1892.

*Waters. Fish. Winnegance Creek. R. S., c. 40, § § 17, 22, 23, 68; Stat. 1885, c. 463.*

The construction and maintenance of a dam across a tidal stream, under legislative authority does not exempt the stream from the general statute for the protection of fisheries.

Winnegance Creek in Sagadahoc County is still subject to the general statute.

AGREED STATEMENT.

Trespass for seizing and carrying away a bass net. From the agreed statement it appears that on the 24th day of February, 1892, the defendants then being duly appointed and qualified Fish and Game Wardens, took from the waters of Winnegance Creek, south of a bridge there, a bass net, then and there set by the plaintiff for the purpose of catching bass, and being the plaintiff's property ; that the wardens had given notice to the fishermen that a bass net could not be set across the channel,

and that said plaintiff had knowledge of this opinion of the wardens; that the net in all respects conformed to the provisions of the statutes, and especially to the provisions of the special act passed in 1885, regulating the catching of bass in Winnegance Creek; that the waters in the channel of said creek would not flow out to an extent that would leave less than three feet of water in said channel. In addition to the tide, there is a natural flow of water toward the Kennebec river; that said net, when set, was fastened at both ends and was stationary as so fastened; that prior to 1837, Winnegance Creek was an inlet of the Kennebec river; that in that year, under the charter granted in 1835, the dam was erected across said creek and northeast of the public highway, extending from the Bath to to the Phippsburg shore; that saw mills on the dam were erected, gates constructed for the purpose of sawing lumber; and that the dam so erected and the mills so constructed thereon, had for their purpose the utilization of water to be held in the creek above said dam by the operation of said gates.

It was also agreed that since said date, at different times as business might warrant, the several mills upon said dam have been in operation; that the owners of said mills each have above the same and between the dam and the highway, booming privileges, in which to place their logs, and that the same were set off and allotted to the several owners of the mills on said dam, wherein each might place and hold his logs for use; that the flood gates in said dam are eighteen feet wide, would admit scows, lighters, and row boats, and that such had at times passed through said gates, and under said highway; that at a certain time of tide, mastless scows, skiffs and boats can pass under said highway, provided the owners of the booming privileges leave an opening so to do; and that there has been place left by the owners of said booming privileges, for craft of the kind and type designated, to pass up said creek.

It was also agreed that the bridge connecting the city of Bath and the town of Phippsburg has been maintained by both for many years; that said bridge is built legally of cob-work spiling, and across the channel are stringers, affording a space

under said bridge from thirty to forty feet long, that gundalos may pass through, up and down; that some forty years ago a schooner was built and launched in the creek and taken out to the Kennebec river, by removing a portion of the dam sufficient to give passage to said schooner from the creek into the river; that the lighters mentioned, carrying boards and wood of some kind, have occasionally passed through the gates, and under the bridge; and that the mill owners, when the tide had reached its flood, have all the gates so constructed that at the beginning of slack water, they close, and the water is held for the purpose of running the mills constructed on said dam.

*Wm. E. Hogan*, for plaintiff.

Sections 17 and 23, of c. 40, R. S., apply to a different class of cases entirely, to the catching of a different kind of fish, and in different waters, and the words "said waters" in section twenty-three can only refer to the waters named in section seventeen; and these sections taken together, must of necessity apply, not only to waters in which the fish named would be found, but to waters where navigation by the public might be obstructed and impeded. The words "low water" in § 68, relate to natural low water, and not low water that might come by artificial means, for the owners of the dam would have the power to retain the water in this creek for hours after the waters in the Kennebec river in the course of nature had reached low tide; and the same would apply to the whole part of said section, for in this creek the flow of the tide can be regulated by the owner as well as the ebb. In construing this section, the court will consider that its purpose was that there should be no obstruction of the channel of navigable waters that impeded or interfered with the public right of passage and use; and there is no public right to pass or use this creek except by consent or permission; and as the fish there caught are not the fish contemplated, and the place where caught is not the kind of place found in any of the statutes relied upon. As the special act of 1885 makes no mention of any method of fishing, plaintiff contends that he was lawfully there, lawfully fishing, and in a lawful manner; and the court should not lose sight of the fact that when the mill owners in

the pursuit of their occupation have run the waters off, there is but a small, narrow thread of water in this creek, and that all the waters during the open season where the fishing takes place are frozen over.

*J. M. Trott,* for defendants.

Navigability of creek not destroyed by act of the legislature. *Charlestown* v. *Middlesex Co. Com.* 3 Mct. 202.

EMERY, J. The plaintiff for the purpose of capturing bass, set a stationary fish net across the channel of Winnegance creek in Sagadahoc county, at a place where there was more than two feet depth of water at ordinary low water.

This act of the plaintiff was in violation of the letter of the last clause of § 23, of c. 40, R. S., (the chapter on Fish and Fisheries) which clause provides that no person "shall set any net crosswise of said waters, but only lengthwise," &c. The phrase "said waters" refers to those waters named in the preceding 17th section of the same chapter, which clearly include Winnegance creek.

This act of the plaintiff was also in violation of the letter of § 68, of the same chapter, which section provides, that "No weir, hedge, set-net, or any other contrivance for the capture of fish, which is stationary while in use, shall extend into more than two feet depth of water at ordinary low water." . . .

The plaintiff contends that both the sections cited were intended only for the protection of salt water fish, or fish that migrate between salt and fresh water, and that the waters named in those sections are tidal waters only. Still the fish he intended to capture by his net, were fish of tidal waters, as defined in § 22, of the same chapter, and the tide ebbed and flowed past the place where he set his net for such capture.

It appears however that in 1835, the Legislature authorized the construction of a dam wholly across Winnegance creek below the place where the net was set, and that in 1837 such a dam was built and has since been maintained. Mills have been built and operated on this dam, and the mill owners have

used the space above for booming their logs. There were and are flood-gates in the dam, which permit the flow of the tide, and there has been some unfrequent, intermittent, and limited navigation by means of boats and skiffs through and above the dam though general navigation above the dam has ceased.

The plaintiff contends that these acts under the authority of the Legislature, have separated Winnegance creek above the dam from the general body of the tidal waters of the State, and taken it out of the above cited statutes for the protection of migratory fish. The legislature in its act authorizing the dam did not express any intent to exempt any part of Winnegance creek from the operation of the general statute relating to Fisheries. No words of exemption can be found in the act of 1835. We do not see how any exemption can be implied. Bass still migrate up and down this creek above the dam. Other migratory fish may do the same.

The statutory protection of these fish is as important now as before the erection of the dam.

The plaintiff further contends that the special act, chap. 463, laws of 1885, entitled "An act for the protection of bass in Winnegance creek," impliedly repeals all other prohibitions than those named therein. He must admit there are no words of repeal. The special act simply imposes a few additional restrictions. The inference is that the restrictions imposed by the general statute were found insufficient for the protection of fish in this particular creek, and that the special statute was enacted to supply the deficiency. The restrictions of the general statute are as necessary as ever. We think the special act supplements and strengthens the general statute instead of repealing it.

The question submitted being determined against the plaintiff, there must be, according to the stipulation of counsel,

*Judgment for defendants.*

PETERS, C. J., WALTON, VIRGIN, HASKELL and WHITEHOUSE, JJ., concurred.