SIDNEY P. LIBERMAN

  VS

WM. C. FAUST.

No. 8328
and
No. 8379

April 24th., 1922.

SIDNEY P. LIBERMAN
    Appellant

    VS

WM. C. FAUST
    Appellant

No. 8328
and
No. 8379

Charles F. Claiborne, Judge.

The defendant conducts a business of transferring persons and their baggage from and to railroad stations. While on a train running into New Orleans, the plaintiff handed his checks for three trunks for himself and wife to an agent of the defendant for the purpose of having them carried to his residence. The defendant received his trunks from the railroad and placed them in his place of business. During the night, a fire broke out on the floor over the place of business of the defendant. The water and chemicals from the fire engines fell into defendant's place of business and damaged the trunks and their contents. Hence this suit. The question of liability of the defendant is not raised; the defendant admits it. The only issue is as to the extent of the damage done, and the objects damaged for which the defendant may be held.

The wearing apparel damaged, and set down as a total loss, consists of five dresses, one scarf, one pair of white canvas oxfords, three hats, three trunks damaged, one underskirt, and one christian science book, all valued at $246.75.

The plaintiff and his wife swear to that loss and to the value of those articles. Under the law, they have made out a case. C. C. 2751 (2722), 2964 (2935), 2971 (2940); 18 A. 664, 156; 20 A. 402; 5 Ct. App. 61; 14 A. 325, 527.

But the plaintiff further alleges, and this is really the only controversy in this case:

    "That in addition to the wearing apparel of petitioner and his said wife that were contained in the said trunks, there were also contained four so-called "dummies" of a publica-

706

tion known as "The Hebrew Standard". That said dummies, which were made up for the particular use of petitioner in his business of soliciting advertisements for said magazine, were made up for him in accordance with his directions and in a very attractive manner, so as to enable him to use them as a prospectus in soliciting such advertisements. That said dummies practically constituted your petitioner's stock in trade by means of which he earned his livelihood. That said dummies were made by a printer and engraver in the City of New York; that only a limited number were printed for petitioner's use, and that the four copies that were in petitioner's trunk were, with the exception of one other copy, the only five copies that he had left for use in the prosecution of his said work. That by reason of the water, acid, and other liquids coming in contact with said documents, the same were so badly disfigured, and mutilated as to make their use for the purpose for which they were intended impossible, and so as to necessitate petitioner's returning to the City of New York to have new dummies made for use in the further prosecution of his said business. That the cost of replacing said dummies will be at least $750, and that the time that it will take to have said dummies replaced will be at least five weeks. That during the time that said dummies are being made up, petitioner will be unable to ply his vocation as he would have been able to do had said dummies been kept intact in said trunks. That your petitioner will lose, during the time that he is waiting to have said dummies made up, at least $100 per week in salary and commissions which he would otherwise have earned had he been permitted to carry on uninterrupted his regular business of soliciting advertisements".

Plaintiff therefore claims, in addition to $246.75, the

value of wearing apparel, the further sums of $750 as the value of the dummies and $500 for loss of time.

The defendant's answer is practically a general denial of liability, and the special plea that all the allegations concerning the damage to the

"dummies" discloses no cause of action".

Upon the trial of the case, the defendant, in support of his exception of no cause of action, objected to the introduction of any testimony in support of the claim for damage to the dummies or for loss of time or earnings. The Judge maintained the exception and the objection, and restricted the testimony to the items of wearing apparel described as baggage. A special judgment maintaining the exception of no cause of action was rendered March 21st, and signed July 15th, 1921. From the Judgment, Liberman has appealed.

After trial on the merits, judgment was rendered on May 23d and signed on May 27th, 1921 in favor of plaintiff for $239.00 . From this judgment, Faust has appealed.

I. The question of law involving the liability of the defendant for damage done to the "dummies" must be determined by the Articles of the Civil Code as interpreted by our Supreme Court.

The defendant engaged in the business of carrying passengers and their baggage to their residence, to and from said road stations is a "carrier" within the meaning of the Civil Code. Article 2751 (2722); C. N. 1782; 19 Baudry-Lac p 512 § 2451; 39 Dalloz p 409 £ 542; 42 A. 696; 19 Ills. 556; 1 Hutchinson on Carriers Sec. 70; Michie on Carriers p 768; 23 C. J. § 1830.

The law of Louisiana relative to the liability of carriers is contained in Article 2751 (2722) of the Civil Code. It reads as follows:

Art. 2751 (2722) "Carriers and watermen are subject, with

respect to the safe keeping and preservation of the things intrusted to them, to the same obligations and duties which are imposed on tavern-keepers in the title: Of Deposit and Sequestration". 1 R. 411; 7 A. 361; 13 A. 454.

Turning to the Article which treats of the obligations of tavern or innkeepers we read:

C. C. 2965 (2936) "An innkeeper is repponsible as depositary for the effects brought by travelers, who lodge at his house; the deposit of such effects is considered as a necessary deposit".

As we have said before, the question of liability of the defendant is not an issue in this case; the defendant has admitted its liability. The only question is, for what "effects" he may be made liable, or, in this case, is he responsible for "dummies". *Q* The question must be answered by the interpretation of this Article 2965 by our Suprême Court, and by the commentators of the Code Napoleon on Article 1952, from which our article has been copied almost in *ipsissimis verbis,* and from commentators, contemporaries of the authors of our Civil Code, whose opinions, we must presume, were known to those authors and were adopted by them, together with the Article of the Code Napoleon.

In the case of Simon vs Miller 7 A. 360, the plaintiff lodged at defendant's inn; they had in their possession gold dust of the value of $5000 which they left in their trunk in their room, both under lock; it was stolen during their absence from the room. The Court said:

"It may be conceded that the $5000 in gold were the effects of these travelers x x x Even then, the responsibility of insurers (innkeepers) is ~~erroneous~~ *enormous,* compared with the profits of a night's lodging. x x x They are responsible only for what is usually and ordinarily in the trunks of travelers; their clothes, and the money

709

necessary for their journey".

The case of Del Valle vs Steamboat 27 A. 90, is thus
stated:

> "The plaintiffs seek to render the defendants responsible
> for the value of a set of jewels lost by Mrs. Yznaga while
> on board the Steamer as a passenger, and of which she al-
> leges she was robbed by thieves, who opened and entered
> her state room in the night time. x x x in regard to bag-
> gage the liability of the carrier does not extend beyond
> the value of reasonable articles of apparel or convenience,
> and for such sum as might be deemed necessary for his ex-
> penses according to the passenger's condition in life and
> the journey undertaken by him.  7 A. 362; 5 A. 604; 18 A.
> 664; 20 A. 402; 1 M. 196". See also 5 Ct. App. 59.

While there are several other cases where innkeepers have
been held liable to travelers for their "effects", we know of none
where the liability extended beyond wearing apparel and necessary
traveling money, nor do we know of any case in which the authority
of the two cases above quoted has been questioned.

In line with the 7 A. 360 and 27 A. 90, we find 11 Toullier
p 354 § 255 Denisart Vo. Aubergiste § 3 No. 3; 4 Duvergier § 329;
15 Dalloz Rep. p 492 No. 175, 176.

The question whether a carrier must reimburse a traveler
the whole value of any and all effects contained in a traveler's
baggage is much controverted, even among civilians, says Baudry-
Lacautinerie, Vol. 20, p 2580, and Marcade, Vol. 8, p 237 § 531.

Guillonard Vol. 2 p 328 § 760 gives the following as his
opinion:

> "The traveler has a right to be indemnified for the value
> of the money and of the precious articles contained in his
> baggage, provided the quantity and the price does not ex-
> ceed what one must expect to find in baggage, keeping in
> mind the condition of the traveler; but he has no right to
> an indemnity, if the value or the quantity of the things

which he claims are out of all proportion with the habitu-
al contents of the baggage of a traveler", *Angell on*
*Carriers § 115 - 2 Parsons Contracts 199*
The counsel for the plaintiff has referred us to 100 U. S.
24 and to several authorities from other sister States where the
common law prevails. Under the common law the origin of the res-
ponsibility of innkeepers

> "may be clearly traced up to the Civil Law, from which the
> common law, without any adequate acknowledgments, has,
> from time to time, borrowed many of the important princi-
> ples which regulate the subject of contracts".
> Story on Bailments §469; 2 Kent 592. *over*

To ask us to be controlled by those decisions would be to
expect us to ignore our own Courts and to endorse Courts of other
States, which, of course, we cannot do. But even in those Courts
there is great diversity of opinion. 11 Ind. 434; 22 Cyc 1083
note 21.

But it is obvious to us that the Articles 2751, 2965 must
be strictly construed, as to the object and the amounts for which
the defendant shall be held towards the plaintiff. 4 Dalloz on
Art. C. N. 1952 §8 p 765. First, on account of the small con-
sideration which the defendant receives for the services rendered
by him, it would be a hardship to impose upon him an unlimited
responsibility. In this case the plaintiff objected to the proof
of the sum paid by defendant to plaintiff to carry his trunk.
Second, the great facility with which a plaintiff may recover a
judgment. It must be remembered that the testimony of the plain-
tiff alone entitles him to a judgment. C. C. 2964 (2935) and
2971 (2940):

> "The deposition on oath or affirmation of a single com-
> petent and credible witness as to the deposit at inns,
> may be admitted as a good proof, even when the value of
> the thing so deposited exceeds $500; but the judge must

711

admit this kind of proof, in that case, with circumspection, according to the circumstances of the fact and the condition of the parties".

The original Article 2965 (2936) of the Code of 1825, even though interpreted in a strict and restrictive manner, worked such a hardship on hotel keepers by delivering them almost defenseless to unscrupulous guests that the legislature of 1860, passed an act entitled

"An act for the protection of Hotel Keepers", which exempted them from much liability upon conforming to the requirements of the Act. This act is now Articles C. C. 2968, 2969. Similar statutes have been adopted in other States of the Union, and in several contries of Europe, England, France, Spain and others. 20 Baudry- Lac p 605, 606 No. 1189 p 621 Nos. 1225, 1226 to avoid the rigor of interpretations of their Courts. By Act 231 of 1912 a broader act was enacted limiting the liability of innkeepers to their guests to $100 -, or the value of reasonable wearing apparel filling a trunk. These Acts indicate the intention of the several legislatures to restrict rather than to enlarge the responsibilities of the innkeepers, adopting the spirit of the decisions of our Courts. If we take the liberty of going further than our own Supreme Court has gone, and extend the nature and kind of effects for which a carrier shall be liable, then will the bars be let down, and every judge will add another "effect" as his own judgment will advise, and in the course of time there will be no exception to the liability of innkeepers or carriers.

The Civil Code does not impose upon carriers the absolute responsibility imposed by the common laws. 47 A. 224; 115 La. 6; 2 Ct. App. 239.

It is therefore ordered that the judgment herein be affirmed.

Judgment affirmed.

April 24th, 1922.