E. D. FOWLER, Petitioner, v. C. W. VERMILLION, Judge, and
LARRY GLYNN, Defendants.

**Judgments:** EFFECT OF ORAL ANNOUNCEMENTS. The court has power
1    during the term to change its opinion and enter a different judg-
ment from that announced at the conclusion of the trial, when con-
vinced that the first pronouncement was wrong or not supported by
the evidence.

**Illegal sale of liquor:** CONTEMPT: VIOLATION OF INJUNCTION: EVI-
2    DENCE. In this contempt proceeding for the punishment of an al-
leged violation of an injunction against the illegal sale of liquor,
the evidence of defendant's connection with the sale is held insuf-
ficient to warrant his conviction.

*Certiorari from Wapello District Court.*—HON. C. W. VER-
MILLION, Judge.

SATURDAY, NOVEMBER 21, 1914.

PROCEEDING in contempt for a violation of a liquor injunc-
tion. Judgment for the defendants.—*Affirmed.*

*M. S. Odle* and *Geo. L. Gillies,* for petitioner.

*Jaques & Jaques,* for defendants.

GAYNOR, J.—It appears from the record in this case that
on or about the 24th day of August, 1908, a decree of per-
petual injunction was issued by the district court of Wapello
county perpetually enjoining one of the defendants from the
illegal traffic in intoxicating liquors in the city of Ottumwa or
elsewhere in that judicial district; that on the 13th day of
November, 1913, the complainant herein filed an information
under oath, alleging that since the rendition of said decree

the said Larry Glynn had kept and sold intoxicating liquors in Wapello county and in the city of Ottumwa, at the place known as No. 401 Church street, and that in said place, in violation of the decree, he sold intoxicating liquors—to wit beer and whisky—to one E. V. Tuttle, and that since the issuance of said decree he had kept intoxicating liquors, with intent to sell the same illegally, and has sold the same illegally.

To the information so filed defendant answered, denying each and every allegation therein made. Upon the issues so tendered the cause was tried, the defendant C. W. Vermillion presiding judge, and judgment and decree finally rendered and entered in favor of said Larry Glynn, dismissing the complaint, the judgment being in the following words and figures:

Be it remembered that on this 29th day of November, 1913, this cause was dismissed. It is therefore considered, ordered, and adjudged by the court that this cause be dismissed and the same is thereby dismissed, and defendant discharged, and his bond exonerated.

It appears from the record that at the conclusion of all the testimony the presiding judge orally announced that he found the defendant guilty of contempt of court, and that he fined him $500, with an attorney fee of $40 for relator's attorney, and it was agreed that formal entry should be forwarded to the judge at Centerville for signature. This, as we gather from the record, was on the 21st day of November, 1913. Whether or not any decree was, in fact, formulated and sent to the judge for signature does not appear, but it does appear that on the 22d day of November, 1913, the judge filed the following opinion with proper caption:

1. JUDGMENTS:
effect of oral
announcement.

Upon reflection, I am not satisfied that the evidence is sufficient to warrant a finding that the defendant Glynn is guilty of contempt. The fact that intoxicating liquors were sold on the premises where the defendant was employed, or in a room so connected with, and under such circumstances

as to leave no doubt that whoever controlled the former was to some extent responsible for the illegal traffic, is established. It is not shown, however, that the defendant personally sold intoxicating liquors. And I have come to doubt the correctness of my first conclusion that he was shown to be in such control of the premises as to charge him with responsibility for the unlawful sales. It is shown that he directed persons inquiring for liquors 'to go back,' and they passed through the pool hall and into a room, where some one else sold the liquor. One who admitted himself to be the proprietor of the pool hall, though disclaiming any responsibility for, or indeed even knowledge of, the traffic in liquors so carried on, testified the defendant was merely an employee, and had charge of the cigar and tobacco business and pool hall in his absence. With this explanation of defendant's connection with and relation to the business undisputed, there is no room for the inference, that might otherwise be drawn from his apparent control of the premises, that he was responsible for the unlawful sale of liquor by some one else. The defendant will therefore be discharged, and his bond exonerated, to which relator duly excepts.

Thereafter, on the 29th day of November, judgment and decree dismissing the complaint, as hereinbefore set out, were duly rendered and entered of record by the clerk of the district court of the county in which the cause was tried.

The petitioner complains in two respects of the action of the court: (1) That the original pronouncement by the judge that he fined the defendant Larry Glynn $500, and costs, was conclusive—a finality; and that the court or presiding judge thereafter had no right to change his mind and enter another and different judgment than that so pronounced and declared in open court. Upon this point we have to say that the record is rather obscure as to whether this case was tried in open court, but we assume from the statements made in the abstract that the trial was had in open court, and before the court, for it is said: "The court found the defendant Larry Glynn guilty of contempt," etc. From the amendment to the abstract we gather that the final judgment dismissing the cause was also entered by the court, and was duly recorded in the same

court. We assume that the trial and final judgment dismissing the complaint were had at the same term of court. Therefore the length of time intervening between the trial and the final judgment—the length of time intervening between the oral pronouncement of judgment and the final entry of judgment— becomes immaterial. It would be an extraordinary doctrine to hold that a presiding judge, who had hastily or inadvisedly reached in his mind a wrong conclusion, and made oral pronouncement of it, could not, upon reflection, and after discovering that his conclusion and pronouncement were wrong and unsupported by the record, correct his first conclusion and judgment, and pronounce and enter upon the records such judgment as, in his judgment, was right and consistent with the record made. To hold thus would be to say that a hasty or unadvised ruling or judgment orally made by the court, at the conclusion of the case, would be binding upon all the parties, and that the court could not thereafter during the term cause to be entered a different judgment than that pronounced, although before entry of judgment he had concluded his first pronouncement was wrong and unsupported by the record. To hold this would be to make the oral pronouncement of the conclusions reached by the trial judge a finality, and would require the entry of such wrong and unjust judgment upon the records of the court, although the trial judge had reached a different conclusion upon the record before the entry was made, thus depriving the judge of the right to correct his own errors, though discovered and admitted, and forcing him to enter upon the records of the court a judgment against the better judgment of the court.

In *Streeter v. Gleason,* 120 Iowa, 706, we find the following language used:

It is argued by appellant that, as judgment had been entered against the garnishee and the record had been signed by the judge, the trial court had no power or jurisdiction to set aside the entry and reopen the proceedings upon garnishee's motion. The position thus taken is untenable. The

signing and approval of the record does not make the entry a finality. The court is given express authority by statute to change or expunge any order or ruling at any time during the term at which it was made. Code, section 243. It may thus set aside a default or vacate a judgment upon cause shown, or, if satisfied that a mistake or wrong has been done, may make such order upon its own motion (citing authorities).

Section 243 of the Code reads:

The record aforesaid is under the control of the court, and may be amended, or any entry therein expunged, at any time during the term at which it is made, or before it is signed by the judge.

In *Hull v. Eby*, 123 Iowa, 259, we find the following language:

But the record shows that, though the decree had been signed, it had not been entered in the record prior to its correction by the district court, and was not therefore a judgment (citing authorities).

In the same case and on the same page, after citing the section above referred to, it is said:

If this can be done after the signed form of decree has become a part of the record, there is no reason for denying the authority of the court to modify its decision before being spread upon the record.

We reach the conclusion that there is no merit in plaintiff's contention on this point.

It is next urged that the evidence submitted did not justify the final entry by the court dismissing the complaint.

We have examined this record, which is very brief, and find that the most that can be said for it, in so far as it affects

this defendant, is that it suggests a suspicion that the defendant Glynn might possibly be in some way concerned in the running of the place complained of, but it is only a suspicion, and this does not justify a conviction. The positive evidence is that he was employed by one Courtney to manage a pool hall for him; that Courtney was the proprietor of this pool hall; that this pool hall was in front of the place where it is claimed this liquor was sold; that one could reach this other place by passing through the pool hall; that Larry Glynn had no interest in the pool hall, and was in no way concerned with it, except as an employee of Courtney. Courtney testified that he had nothing to do with the building in which it is claimed the liquor was sold, and exercised no control over it; that the defendant's business was to sell pop and cigars and collect for the pool games when Courtney was away from the pool halls. There is no showing that this place, where it is claimed the liquor was sold, was permanently occupied by any one, or that liquor was permanently kept there for sale, or with intent to sell. The most is that some one was in there at certain times and sold liquor. These parties are not shown to be in any way related to Courtney or to Glynn, nor does it appear how they got in there.

*2. Illegal sale of liquor: contempt: violation of injunction: evidence.*

We find no ground for interfering with the action of the court in this case, and it is therefore—*Affirmed.*

LADD, C. J., and DEEMER and WITHROW, JJ., concurring.