THE STATE OF IOWA *Ex rel.* MILTON. REMLEY, Attorney
General v. BYRON F. MEEK *et al.*

**Deed by State:**   RESERVATION OF POLICE POWER:   *Nuisances.* Where
the state deeded a dam and lots on a stream and the land op-
posite thereto, the dam at the time having no fishway, the
grantees could not maintain such dam without a fishway, in
violation of Code 1897, section 2548, declaring such a dam to
be a nuisance, on the ground that said statute was as to them
an impairment of the obligation of a contract, the grant from
the state not having expressly surrendered its right to re-
quire the construction of fishways, in the exercise of its police
power.

**Constitutional Law:**   POLICE POWER:   *Nuisances.*   Code 1897, sec-
tion 2548, declaring a dam without a fishway a nuisance, is
not violative of Constitution, Article 1, section 18, prohibiting
the taking of private property for public use without just
compensation.

SAME:   The state has the right to prevent obstructions to the
passage of fish in navigable streams.

**Res Adjudicata:**   FOUNDATION OF JUDGMENT:   *Oral evidence to es-
tablish.*   Where the defense was that the matter sought to be
litigated had been previously adjudicated, oral evidence was
admissible to show the facts upon which the former judg-
ment relied upon was founded.

SAME:   *Criminal prosecution and abatement of nuisance.*   A judg-
ment of not guilty, entered on a prosecution before a justice
of the peace for the maintenance of a nuisance, under Acts
Seventeenth General Assembly, chapter 188, declaring the main-
tenance of any dam without a fishway to be a nuisance, which
may be abated, was a bar to a subsequent suit in equity to
abate the nuisance, the justice having jurisdiction, and there
being no change in the conditions, since the abatement of the
nuisance would have been a part of the penalty imposed had
there been a conviction before the justice.

**Information Before Justice:**   CONSTRUCTION:   *Jurisdiction.*   Acts
Seventeenth General Assembly, chapter 188, required the
owner of any dam to construct within a reasonable time a
fishway, and section 2 declared a dam without a fishway to
be a nuisance, which might be abated. *Held.* that where
an information named the offense charged as maintaining a

nuisance, and in describing the offense stated that defendants maintained a dam, over which they failed to construct, within a reasonable time, and maintain a fishway, the court was not without jurisdiction to try defendants for maintaining a nuisance, on the ground that the information described only the misdemeanor of failing to put in a fishway, since the first and second sections should be read together as creating but one offense, the maintaining of a nuisance.

CONSTRUCTION OF STATUTES: *Jurisdiction of justice.* Acts Seventeenth General Assembly, chapter 188, declares a dam without a fishway to be a nuisance, and section 3 imposes a fine of not more than $50. Code 1873, section 4092, providing that a penalty of $1,000 may be imposed for maintaining a nuisance, states that it shall be imposed where no other punishment therefor is specifically provided. *Held,* that a justice of the peace was not without jurisdiction of an offense, under chapter 188, on the ground that the penalty that might be imposed exceeded his jurisdiction, since the $1,000 fine could be imposed in cases, only, for which no other punishment was provided and another punishment was specifically provided by chapter 188.

*Appeal from Wapello District Court.*—HON. F. W. EICHELBERGER, Judge.

WEDNESDAY, OCTOBER 24, 1900.

THE statement of the issues we take from the brief of appellant's counsel. Its correctness is conceded, save as to one matter, which will be noticed in proper connection. The state of Iowa, as a part of the plan for the improvement of the navigation of the Des Moines river, authorized by chapter 113, Acts First General Assembly, and subsequent acts, constructed a dam, with locks, at Bonaparte. The dam was completed in the year 1852. The state transferred the use of the dam to the Des Moines Navigation & Railroad Company, but afterwards, upon a settlement with that company, resumed its ownership. Thereafter the state, pursuant to the provisions of chapter 25, Acts Eighth General Assembly, by commissioners as therein provided, conveyed to the ancestors of the defendants, Byron

F. Meek, Kirk L. Meek, and Hugh H. Meek, for the price of $200, "all the interest of the state in and to the locks and dam at Bonaparte and the land opposite thereto and the water power thereto belonging." After the completion of the dam and locks, they were used for purposes of navigation, and continued to be so used until some time probably as late as 1865 or 1866. At some time, the date of which does not appear in the record, but after the conveyance to the Meeks, the gates and the locks were closed by a wall built across the lower end of the lock. About the year 1870 the owners of the dam built across the river, just below the old structure, a series of cribs, making a continuous structure, with a space varying from a few inches to 4 feet between the new and the old part, which was filled with gravel and rocks, and the whole covered with planks, making a structure 28 feet wide, the new structure being perhaps 3 or 4 inches higher than the old. In this condition the dam is perpendicular, and constitutes an absolute obstruction to the passage of fish. In 1893 an information was filed before J. G. Thomason, justice of the peace, charging the defendant with a violation of the provisions of chapter 188, Acts Seventeenth General Assembly. A trial was had, which resulted in a judgment of "Not Guilty." The present action is brought in equity, under section 2548, Code 1897, to abate, as a nuisance, the dam so maintained without a fishway. The defenses interposed by the answer are: (1) That the statute (section 2548) is void, because in violation of section 18, article 1, and section 20, article 1, of the constitution of Iowa, and of section 10, article 1, of the constitution of the United States, for that it is a taking of private property for public use without making compensation, and impairs the obligation of a contract existing between the state of Iowa and the ancestors of defendants. (2) That the questions here involved were adjudicated and determined in proceedings had before a justice of the peace in 1893. Upon a hearing, plaintiff's bill was dismissed,

and all costs were taxed to the state. From this judgment the present appeal is taken.—*Affirmed.*

*Millon Remley,* Attorney General, *E. R. Harlan,* and *Read & Read* for appellant.

*Mitchell & Sloan* and *Wherry & Walker* for appellees.

WATERMAN, J.—Nothing is claimed in argument by defendants on the issue that section 2548 of the Code, which declares any dam constructed or maintained without a fish-way to be a nuisance, is in violation of section 18, article 1, of the constitution of the state. This provision of the constitution prohibits the taking of private property for public use without making just compensation. Because of the fact that this matter is not pressed in argument, we might properly pass it without further remark; but we deem it proper to say that this point is settled against defendants' pleaded claim by the case of *State v. Beardsley,* 108 Iowa, 396. The authorities sustaining the proposition that a statute of this nature is a valid exercise of the police power will be found collected in that opinion. We need not again review them.

This leaves for our consideration but two questions: (1) Is section 2548 void as to defendants because of impairing the obligations of a contract? and (2) are the matters herein involved *res judicata?*

The history of the Des Moines river land grant is so well known that we need not repeat it, further than to say that the state accepted the grant of lands from the general government, and undertook to improve the navigation of that stream by erecting a system of dam and locks. As a part of this system, it constructed and maintained for some years a dam on the site of the one in question. After a time, in the year 1860, by an act of the general assembly commissioners were appointed to sell the interest of the state in this and other dams on said river.

These commissioners were authorized to make deeds without warranty, and containing covenants on the part of the purchasers that they, their heirs and assigns, would forever keep said locks and dam in good repair, and that they would, at all reasonable times, pass boats through said locks, and charge only such tolls as should be agreed upon between such commissioners and the purchasers, not exceeding the maximum rates prescribed in the contract by the state of Iowa with the Des Moines Navigation & Railroad Company. On the thirty-first day of October, 1861, a conveyance was made by the commissioners, in pursuance of this power and in conformity therewith, to Robert Meek, Isaiah Meek, and Joseph Meek, of Van Buren county. The interests of Robert and Joseph Meek were thereafter conveyed to Isaiah Meek, who died some years since. The defendants are sons of the latter, and, through inheritance and conveyances from other heirs, have become vested with all of their father's rights in and to said dam. There was no express reservation in the deed from the commissioners of any right on the part of the state to exercise police powers with reference to the property conveyed. Defendants claim something because of the fact that the Des Moines river is a navigable stream. It is thought that for this reason a distinction exists between this case and that of *State v. Beardsley,* cited above. While the dam in the *Beardsley Case* was across a non-navigable stream, yet it will be seen that the writer of that opinion in reaching his conclusion assumed the right of the state to compel the construction of fishways over dams across navigable streams, and thought it necessary only to adduce arguments to show that this right extended also to dams across streams not navigable. If there is any distinction to be made, it would seem to us the state's rights are clearer in case of navigable streams than those not navigable.

The right of fishing in navigable waters has always been held common in the public, and subject to legislative

protection and control. The question most discussed by the courts is whether such control extends to non-navigable streams, where the right to fish is vested exclusively in the proprietors of the land on either side. *State v. Franklin Falls Co.,* 49 N. H., 240; *Oliver v. Bailey,* 85 Me., 161 (27 Atl. Rep. 90). But, if adjudicated cases are desired to sustain directly the right of the state to prevent obstructions to the passage of fish in navigable streams, they are not wanting. See *Holyoke Co. v. Lyman,* 15 Wall., 500 (21 L. Ed. 133). It is not claimed on this point that the action of the state in enforcing a police power is in any way restricted by the terms of the federal constitution, nor could any such claim be supported. The power of the state to control the right of fishing in navigable waters is ample and complete, so long as intercommunication between the states is not thereby affected. Gould, Law of Waters, sections 35-43. The cases sustaining this rule will be found collected by the learned author in the note to the first of these sections. See, also, Tiedeman Limitations 619.

The main contention, however, of defendants on the constitutional question presented, stated in the language of their counsel, is this: "In the case at bar the state was the owner of the river bed and also of the abutting riparian lands, and the state built the dam with no fishway in it, maintained it for years, and sold all its interest in and to it to defendants' ancestors. In this case the state did not sell and grant to us the right to build a dam; it sold and granted us a dam already built." For these reasons and upon these grounds it is sought to further distinguish this case from *State v. Beardsley.*

Defendants rest their claim that the action here sought to be taken by the state impairs the obligation of their contract of purchase on the case of *Com. v. Pennsylvania Canal Co.,* 66 Pa. St., 41. In that case the state, owning a canal, had erected dams in the Susquehanna river to aid in supplying the canal with water. It sold both canal and dams, and .

thereafter, under a statute similar to our section 2548, sought to compel the purchaser to construct, at his expense, fishways over some of the dams. The court holds that, inasmuch as no such right was reserved in the grant, the statute could not be enforced against defendants; that the power which was attempted to be exercised was that of eminent domain, and was a taking of private property for public purposes without first making compensation therefor, and for this reason amounted to an impairment of the purchaser's contract. The opinion of the trial judge, which is set out in the report, and which is expressly adopted by the appellate court, repudiates the suggestion that the statute was an exercise of the police power, but it recognizes that a different rule prevails in Massachusetts. So, too, a different rule prevails in this state; for in *State v. Beardsley* the opinion is based largely upon Massachusetts cases, and the holding is expressly made, as we have already said, that the statute in question is a legitimate exercise of the police power of the state. This being true, the right or power of the state would be the same, in case of a dam built by it and sold, as it would, where a-franchise was given to build a dam.

If the state had originally granted a franchise to defendants' ancestors to build a dam, fixing its height and breadth, would there not be as much reason for saying the statute could not be enforced as in the case at bar? Yet the *Beardsley Case* in principle holds that in such an instance as that we have supposed the statute would apply. In some states it is held that, independent of any statute, one who erects a dam is required to maintain a passageway for fish. *Stale v. Gilmore,* 141 Mo. Sup., 506 (42 S. W. Rep. 817); *Vinton v. Welsh,* 9 Pick., 87; *Inhabitants of Town of Stoughton v. Baker,* 4 Mass., 522. But it is said by defendants that the state by its grant bargained away its right to exercise this police power. If we were to concede that the state might do this in a case

of the kind we have here, we should be obliged to say that it must be done in express terms. "While the charters of private corporations are contracts, yet whenever privileges are granted, and the grant comes under review in the courts, such privileges are to be strictly construed against the corporation, and in favor of the public, and nothing passes but what is granted in clear and explicit terms." *Holyoke Co. v. Lyman, supra.* Nothing is to be taken as against the state but what is expressly given. *Newton v. Commissioners,* 100 U. S., 548 (25 L. Ed. 710). Although no right was reserved in the grant under consideration to require the construction of fishways, nevertheless such right remained in the state, because it was not expressly surrendered in the grant. Defendants' ancestors acquired by the grant the dam and the interest of the state in the land opposite thereto; that is, they obtained the dam, and the means and right to maintain it. Nothing more than this was conveyed, and such a grant by the state does not abrogate its right to exercise thereafter a police power over the thing granted. In our opinion, no constitutional right of defendants is involved in this proceeding.

II. The plea of *res judicata* is founded upon the fact that in 1893 an information was filed before a justice of the peace against these defendants and some others, charging them with the crime of nuisance, in that from April 9, 1892, up to the date of filing the information, they had maintained this dam without a fishway, and that more than a reasonable time necessary for the construction of such fishway had elapsed since the passage of chapter 188, Acts Seventeenth General Assembly. Upon a plea of not guilty, there was a trial, which resulted in an acquittal. This information was filed, as appears from its terms, under said act of the Seventeenth General Assembly. That chapter is in three sections. Section 1 requires the owner of any dam to construct, within a reasonable time, and maintain, a suitable fishway across it. Sec-

tion 2 declares a dam without a fishway to be a nuisance, which may be abated.  Section 3 imposes a fine of not more than $50, nor less than $5, for violating the provisions of the act; that is, for failing to construct such fishway within a reasonable time, or to maintain it thereafter.  For a second offense the minimum penalty is $20.  It appears from oral evidence that defendants, on the hearing before the justice, admitted the maintenance of the dam without a fishway, and set up their grant from the state, in justification of their right to do so.  It is also shown by the testimony of the justice that the sole ground of his judgment was that defendants had a right, under their contract with the state, to maintain the dam without a fishway.  This evidence was admissible, and sufficient to establish the facts upon which the judgment was founded.  Freeman Judgment, section 273; *Emigrant Co. v. Fuller,* 83 Iowa, 599; *Evans v. Clapp,* 123 Mass., 165; *Black v. Miller,* 75 Mich., 323 (42 N. W. Rep. 837); *Wood v. Faut,* 55 Mich., 185 (20 N. W. Rep. 897); *Follansbe v. Walker,* 74 Pa. St., 306.

But it is urged on behalf of the state, as to this information, that while it named the offense charged as maintaining a nuisance, it described only the misdemeanor of failing to put in a fishway within a reasonable time; and it is said the justice had no jurisdiction to try defendants for the crime of maintaining a nuisance.  The information, in describing the offense, stated that defendants owned and maintained a dam over which they had failed to construct within a reasonable time, and to maintain, a fishway.  By the terms of the law under which the information was filed, these acts and omissions constituted a nuisance.  That act creates but one offense, and that is maintaining a nuisance.  Sections 1 and 2 are to be read together.  The intent of the act was not only to punish a defendant for past derelictions, but to remedy matters for the future.  It is thought, because the general penalty for

the offense of maintaining a nuisance may be a fine of $1,000, the justice had no jurisdiction of that offense. Section 4092, Code 1873, which provides this penalty, expressly states that it is to be imposed "where no other punishment therefor is specially provided." As we have seen, a special penalty is provided for the particular offense we have under consideration, and it is one which a justice of the peace may lawfully impose. A judgment of guilty by the justice would have been a finding of the existence of the nuisance, and upon this finding it would have been his duty to issue a warrant for its abatement. Section 4094, Code 1873. The section preceding this one provides that, when a person is adjudged guilty of a nuisance on indictment, complaint, or action, such nuisance may be abated by the court. Section 4094 recites that, when "conviction is had upon an action before a justice of the peace," he may issue a warrant of abatement. That a criminal proceeding is referred to is sufficiently evident from the use of the word "conviction."

It is further contended by appellant that an acquittal in a criminal action is not a bar to a subsequent civil proceeding founded on the same facts. That is the general rule. 1 Greenleaf Evidence, section 537; Freeman Judgment, 319a; 2 Van Fleet, Former Adjudication, section 488. One reason for this, even where the parties are the same, is the difference in the degree of proof necessary to make a case in the two instances. In the criminal proceeding the state can secure judgment only on proof which excludes all reasonable doubt, while in the civil action its case is made by a preponderance of the evidence. But to this rule there is one notable exception. Where the civil action is to secure a forfeiture, which would have been part of the penalty to be imposed in the criminal proceeding, and is between the same parties, the previous acquittal is a bar. *Coffey v. U. S.,* 116 U. S., 437 (6 Sup. Ct. Rep. 437, 29 L. Ed. 684). In the case of *U. S. v. Jaedicke,* —

D. C., — (73 Fed. Rep. 100), the *Coffey Case* is considered, and the reasons taking its holding out of the general rule are explained. We think the doctrine of the *Coffey Case,* applies here. The state is plaintiff in this action, and what is sought to be recovered or effected is what would have been part of the penalty imposed by law, had there been a conviction before the justice. This action is therefore in the nature of a second prosecution for the same offense of which defendants have been acquitted. Counsel for the state rely, in this connection, upon the case of *Martin v. Blattner,* 68 Iowa, 292. That was an action to enjoin a liquor nuisance, brought after defendant had been acquitted before a justice of the peace upon an information which charged him with selling such liquor. It is enough to show the want of application of that case to the issues here to call attention to the fact that the parties to the two actions were not the same. But we may say, further, that the justice in that case had no power to abate the nuisance, or to impose any penalty therefor; the punishment prescribed being beyond his jurisdiction. Criminal prosecutions for that offense must be by indictment. Code, section 2384. It is true that an acquittal on the charge of maintaining a nuisance does not bar another prosecution under changed conditions. But here the conditions have not changed. The testimony of the justice shows, as we have said, that he held defendants to have a contract right to maintain the dam without a fishway. Unappealed from, that judgment is final; for there is no showing that defendants have lost the right since the former trial. The plea of *res judicata* is sustained, and the judgment below AFFIRMED.

GRANGER, C. J., not sitting.