RUDOLPH LUCIA, Petitioner, v. HUBERT UTTERBACK, Judge, Respondent.

EVIDENCE:   Reporter's Notes—Nonpresence of Witness.   Upon the
1 · trial of a proceeding, a transcript of the reporter's notes taken upon
   a former trial is admissible on the showing that the witness *is not
   present in court;* and it matters not that said former trial was abortive.

EVIDENCE:   Demonstrative Evidence—Identification.   Evidence re-
2 viewed, and held to amply identify the liquors offered in evidence as
   the liquors found in defendant's possession.

INTOXICATING LIQUORS:   Contempt—Knowledge of Presence of
3 Liquors.   A showing that intoxicating liquor was found in defend-
   ant's place of business under such circumstances as to indicate that
   its sale was a part of the business carried on, presents a fair fact
   question whether such possession was with the actual or implied knowl-
   edge of the proprietor.

EVIDENCE:   Evidence Unlawfully Obtained.   Evidence obtained by
4 reason of an unlawful search is nevertheless admissible.

AFFIDAVITS:   Use as Evidence.   Affidavits are competent on the trial
5 of contempt proceedings, in the absence of any demand for the actual
   production and oral examination of the witness.

*Certiorari to Polk District Court.*—HUBERT UTTERBACK, Judge.

MAY 10, 1924.

ORIGINAL proceedings in certiorari, to review the action of the respondent, judge of the district court of Polk County, in two cases wherein the petitioner was adjudged guilty of contempt in having violated a temporary injunction restraining him from keeping for sale or selling intoxicating liquor. The original judgments are affirmed, the petitions dismissed, and the writs discharged.—*Dismissed and writs discharged.*

*Tomlinson & Maley,* for petitioner.

*Vernon R. Seeburger,* County Attorney, and *Russell Jordan,* for respondent.

VERMILION, J.—On October 10, 1922, a temporary injunction was issued by the district court of Polk County, restraining and enjoining the petitioner from in any way or manner conducting the nuisance complained of, or any like nuisance within the state of Iowa, either by selling, manufacturing, keeping for sale, trafficking in, or disposing of intoxicating liquors, either by himself, servants, agents, or employees, or through any device or evasion.

Upon an information filed by the county attorney of Polk County on March 12, 1923, charging a violation of such an injunction, the petitioner was, upon a trial before the respondent judge, found guilty of contempt of court for violating the injunction, and fined $200.

Upon a like information, filed April 3, 1923, the petitioner was again tried before the respondent, and found guilty of contempt, and given a sentence of six months in the county jail.

Separate writs of certiorari were sued out of this court, to review these several judgments. The cases are submitted together.

In the first case, it appears without dispute that the petitioner was, at the time of the transaction upon which the charge of contempt was based, engaged in operating a so-called "temp bar" in the city of Des Moines. Shortly after 6 o'clock on the morning of February 10, 1923, four police officers, armed with a search warrant for a restaurant next door, entered petitioner's place of business through an opening in the wall between the two rooms, and found a pitcher containing about two and a half quarts of liquid. The contents of the pitcher were put into three quart bottles and taken away by the officers. A subsequent analysis of what is claimed to have been the identical liquid so found and seized showed the presence of more than 30 per cent of alcohol.

It is the contention of the petitioner that it is not shown that the liquid analyzed was the same as that seized, or that it was in the same condition as when seized.

In this connection, it is urged that the court erroneously admitted the introduction in evidence of the shorthand notes of the testimony of two witnesses, taken upon a former hearing.

**1. EVIDENCE:** It appears that there had been a previous hear-
reporter's notes: ing upon a charge of contempt, based upon the
nonpresence of
witness. same transaction, at which it was discovered,
after the evidence had been introduced, that the information
had not been sworn to, and thereupon the proceeding was dis-
missed by the county attorney without prejudice, and the in-
formation in the instant case immediately filed.

The testimony of two witnesses, Dorman and Iseminger,
was taken on the first hearing. These witnesses were called on
the hearing in question, but failed to respond. Thereupon the
court permitted their testimony, as taken on the former hearing,
to be read in evidence. The petitioner relies upon the case of
*State v. Brown,* 152 Iowa 427, to sustain his contention that
this evidence was improperly received, in the absence of a show-
ing that the witnesses were beyond the reach of a subpoena. The
question considered in that case was the admission of the testi-
mony of a witness upon a former trial, when he was beyond the
reach of a subpoena at the subsequent trial, and the case did not
involve a consideration of Section 245-a, Code Supplement of
1913. That section makes the shorthand notes of the evidence
admissible on any retrial of the case or proceeding in which they
were taken. Under this section, it has been repeatedly held that
it need only appear that the witness whose former testimony is
thus introduced is not present in court. *Lanza v. Le Grand
Quarry Co.,* 124 Iowa 659; *Fitch v. Mason City & C. L. Traction
Co.,* 124 Iowa 665; *Van Norman v. Modern Brotherhood,* 143
Iowa 536.

The only other objection made to the introduction of the
former testimony of these witnesses is that the former hearing
on which it was taken was a nullity, and so treated by the State.
No question is raised but that the hearing was a retrial of the
same proceeding. The introduction of shorthand notes of testi-
mony taken on a former trial is not made to depend upon the
result of such trial, nor upon the validity of any judgment that
might have been then rendered.

Upon the question of the identity of the liquid found at
petitioner's place of business with that analyzed, the testimony
of the witness Dorman was to the effect that he was a police-

2. EVIDENCE:
demonstrative
evidence: iden-
tification.

man, and connected with the liquor bureau; that, on the occasion in question, he found in petitioner's place, in a pitcher above the bar, two and one-half quarts of liquor; that he poured it out of the pitcher into three quart bottles, filling two of them, and the third half full; that he put the liquor that he found, in the bottle marked on the trial Exhibit A; that he took it to the police station, wrote the label out, put it on, and turned it over to Mc-Ginn, to take to the city chemist for analysis. McGinn testified that he worked in the office of the city liquor bureau, keeping the records and taking samples of all liquors to the city chemist, for the purpose of having them analyzed; that, about February 10th, Dorman delivered to him three bottles, already labeled; that he was familiar with Dorman's handwriting, and in his opinion the labels were in his handwriting; that Exhibit A was one of the bottles. Dorman gave him on February 10, 1923; that after Dorman gave it to him, until the time of the analysis, it was in his possession. On cross-examination, he testified that, from the 10th of February until "that liquor" was given to the city chemist for analysis, it was in a cabinet in the liquor bureau; that there were about 200 other samples there; that it would be possible that the labels were changed, but that he did not think the label had been changed; that he put a private mark on all the samples, and kept a record in a book; that he gave it to the city chemist on February 13th, with four or five other samples of liquor, and took his receipt; that three other police officers had keys to the liquor bureau. Davis testified that he was city chemist; that in February he made an analysis of liquor, Exhibit A, brought to him by McGinn on February 13, 1923; that he found it to be corn whisky, or moonshine, containing 36.5 per cent alcohol by volume and 30.2 per cent by weight; that it was capable of being used for beverage purposes, and, if so used, would be intoxicating.

We think the evidence was sufficient to sustain a finding that the liquor found at petitioner's place of business was the same as that analyzed. The difficulty of positively identifying a liquid is manifest. It must be done by identifying the container, and by evidence from which it can be found with the required certainty that the contents have not been changed or tampered

with. Doubtless, the sealing of the bottle would tend to greater certainty. But here it is shown that the liquor put in the bottle was a portion of that found at petitioner's place; that the bottle and its contents were delivered to an officer whose duty it was to keep such samples for the purpose of evidence; that the liquor was by such officer delivered to the chemist, and by him analyzed. Absolute certainty is not required. Every person who handled the bottle was examined as a witness, and it was shown that it was at all times in the possession of some one of them. The situation is not at all comparable to that in the case of *State v. Kingsbury*, 191 Iowa 743, relied upon by petitioner. In that case, all of the bottles in question had been left, by parties who were drinking, in the weeds at the roadside for a considerable time, and some of them later were hidden in the grass at the city dump ground, where they were accidentally found.

It is said that there is no showing that the petitioner knew of the presence of the liquor in his place of business. He testified that he was operating the place as proprietor, and had two employees, who were working there the day before the liquor was found, but that he had not been there on that day; and he denied that he kept or sold intoxicating liquor at the place, and denied any knowledge of that found there. The presence of the liquor in the place, under such circumstances as to indicate that its sale there was a part of the business carried on, was shown. Petitioner's employees were in charge of the place the day before. Whether, under these circumstances, petitioner had actual or implied knowledge of the unlawful use of the premises was a question of fact for the determination of the trial court, and with the conclusion reached we are not, under the record, required to interfere. *State v. Arie*, 95 Iowa 375; *Nies v. Anderson*, 179 Iowa 326. Cases involving the liability of a landlord for the acts of a tenant unknown to him are not in point. In *Davey v. District Court*, 177 Iowa 1, cited by petitioner, the evidence showed a sale of liquor by a clerk in Davey Brothers' store, not in the presence of the person charged with contempt, and after the partnership of which, as we understand, he had been a member, was dissolved. In *Fowler v. Vermillion*, 167 Iowa 362, also cited, one merely employed by the proprietor to

3. INTOXICATING LIQUORS: contempt: knowledge of presence of liquors.

sell cigars and look after a pool hall was held not to be responsible for the sale of liquor in another room, by someone with whom he was not shown to be in any way connected.

The contention that the liquor was found and the evidence obtained by an illegal search is disposed of by the cases of *State v. Tonn*, 195 Iowa 94, and *State v. Rowley*, 197 Iowa 977.

4. EVIDENCE: evidence unlawfully obtained.

It is well settled that one charged with contempt is not entitled to a jury trial. *Drady v. Given*, 126 Iowa 345; *Flannagan v. Jepson*, 177 Iowa 393; *Manderscheid v. District Court*, 69 Iowa 240; *Eilenbecker v. District Court*, 134 U. S. 31 (33 L. Ed. 801); *State v. Arhontis*, 196 Iowa 223.

In the second case, the evidence on behalf of the State tended to show that, on April 2, 1923, one Bowman bought of the petitioner, in the same place involved in the first case, a bottle

5. AFFIDAVITS: use as evidence.

of liquor which, upon analysis, was found to contain 30.3 per cent of alcohol by volume and 24.9 per cent by weight; that Bowman paid the defendant for the liquor with a marked dollar bill, which was found immediately afterward, on the entry of the officers, in the pocket of the petitioner; that, when the officers came into the place, the petitioner emptied the contents of a pitcher or coffee pot in the sink; that what he emptied had an odor the same as the contents of the bottle of liquor purchased by Bowman, and smelled like sugar or corn whisky. Bowman was not called as a witness, but an affidavit sworn to by him was offered in evidence, and objected to by petitioner on the ground that it was incompetent, irrelevant, and immaterial, not the best evidence, and deprived the defendant of the opportunity of cross-examination. No ruling was made on the objection; and no demand was made for the production and oral examination of the witness.

Section 2407 of the Code, relating to the violation of injunctions granted under the chapter on intoxicating liquors, provides that the trial may be had upon affidavits, or either party may demand the production and oral examination of the witnesses. While the petitioner was entitled to a ruling on his objection (*McGlasson v. Scott*, 112 Iowa 289; *Haaren v. Mould*, 144 Iowa 296), the statute expressly authorizes proof to be made by affidavit, in the absence of a demand for the production and

oral examination of the witness. See *Teasdale v. Anderson,* 196 Iowa 673. The admission of the affidavit was not error. It is, in part, as follows:

"I have been buying intoxicating liquor in this temp bar for the past six months. I have bought it from Rudolph Lucia himself; also, his brother Tony, and another tall fellow, whose name I do not know. They claimed the stuff I bought was 'sugar whisky.' A pint of this stuff will make a man pretty well organized. * * * On the morning of April 2, 1923, I went to this temp bar, to get some more of this sugar whisky. Between the hours of 9 and 10 A. M., I went in this temp bar and told Rudolph Lucia I wanted a half pint of sugar whisky. He produced a bottle full of this stuff, and I gave him a paper dollar for the same."

Aside from the affidavit, however, there is evidence that Bowman, who seems to have been acting with the officers, had no liquor upon his person when he entered the petitioner's place, but had a marked dollar bill; that the officers took the bottle from his pocket as he left the place, and found the marked dollar bill in petitioner's pocket. The testimony as to the identity of the liquor analyzed, with that taken from Bowman, is substantially the same as in the other case considered.

What has been said in that case also disposes of other questions presented in this. The petitioner denied the sale to Bowman, and claimed that the marked dollar was paid him on a debt which Bowman owed him. He is corroborated by the testimony of two frequenters of the place. He also claimed he had sold the place, or the business, to his brother. It requires no citation of authority to sustain the proposition that, if he sold intoxicating liquor, he was guilty of contempt, no matter who controlled or owned the place where it was sold. No reason appears for disturbing the conclusion of the court below, upon this conflicting testimony.

In each of the cases, the proceedings below will be affirmed, the petition herein dismissed, and the writ discharged.—*Affirmed.*

ARTHUR, C. J., EVANS, STEVENS, FAVILLE, and DE GRAFF, JJ., concur.