STATE OF IOWA, Plaintiff, Appellee, v. RICHARD NELSON, Defendant, Appellant.

No. 45583.

NOVEMBER 18, 1941.

John M. Rankin, Attorney General, Jens Grothe, Assistant

Attorney General, and James E. Coonley, County Attorney, for plaintiff, appellee.

C. A. Smedal, for defendant, appellant.

WENNERSTRUM, J.—The defendant was charged in a county attorney's information with the crime of illegal possession of intoxicating liquor, and was further charged with two previous convictions of the intoxicating liquor laws of Iowa. The defendant entered a plea of not guilty and upon trial the jury returned a verdict of guilty. A motion for a new trial and exceptions to instructions were submitted to the court. In the motion for a new trial the principal question presented to the court pertained to the admissibility of certain evidence obtained under a claimed illegal search warrant. The motion for a new trial, exceptions to instructions and other motions presented, were overruled and the defendant was sentenced. He has appealed to this court.

The facts in this case may be briefly summarized as follows:

The defendant and his family, at the time charged in the information, were residents of Iowa Falls, Iowa. Early in the morning of January 16, 1940, the sheriff of Franklin County, accompanied by assisting officers, went to the residence of the defendant and searched his home for intoxicating liquor. The sheriff had in his possession a search warrant originally dated June 12, 1939, which authorized the search. The sheriff admitted at the trial that the date of the search warrant was changed from June 12, 1939, to January 16, 1940, but testified that before the search in question was made he telephoned the magistrate who had issued the search warrant and obtained his permission to change the date. A small amount of intoxicating liquor was found on the defendant's premises.

The defendant during the trial, by objections to the admissibility of testimony and the exhibits offered in evidence, raised the question as to the right of the court to admit the testimony and exhibits obtained as the result of an unlawful and illegal search. As previously stated this question is further raised in the motion for a new trial. It was also presented in several other motions filed wherein the defendant again raised this particular question.

The State does not effectively deny that the search warrant which was used in this case was invalid. No search had been made within the time limit after it was issued, as provided by statute. (Section 13441.12, 1939 Code of Iowa.) Therefore, the principal question before us is as to whether or not the evidence and exhibits obtained by virtue of this illegal search could be received and properly submitted to the jury in its consideration of the defendant's guilt.

The legal proposition raised by the defendant has been repeatedly presented to this court for consideration and it has often given expression of its conclusions and holdings relative to the objections here made on behalf of the defendant. Counsel for the defendant, in a most forceful and able presentation, asks this court in its ruling on the proposition here presented to reverse our holding as expressed in State v. Tonn (1923), 195 Iowa 94, 99, 191 N. W. 530. We there held that evidence obtained under a claimed illegal search was admissible and reversed our previous holdings relative to this question as expressed in State v. Height, 117 Iowa 650, 91 N. W. 935, 59 L. R. A. 437, 94 Am. St. Rep. 323; State v. Sheridan, 121 Iowa 164, 96 N. W. 730; and State v. Rowley, (Iowa), 187 N. W. 7. This last opinion was later withdrawn and the final expression of this court as to this particular case is found in State v. Rowley, 197 Iowa 977, 195 N. W. 881. Counsel for the appellant asks that we recede from our present position and follow the holdings as set forth in our earlier cases. It is contended that, in receiving the questioned evidence in this instant case, the defendant's constitutional rights as to unreasonable search and seizure, as set forth in the Fourth Amendment to the Constitution of the United States and Article I, Section 8, of the Constitution of the State of Iowa, are violated.

In State v. Tonn, supra, Faville, J., speaking for this court, set forth the historical development of the rule which we now follow. In that opinion he commented upon the two divergent courses which the several courts of this nation have followed and discussed the development of the federal rule which was first expressed in Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, decided in 1885. Since this court announced its ruling in State v. Tonn, supra, we have repeatedly adhered

to the expressions there made on this question in the following cases: State v. Gorman (1923), 196 Iowa 237, 239, 194 N. W. 225; Joyner v. Utterback (1923), 196 Iowa 1040, 1044, 195 N. W. 594; State v. Rowley (1923), 197 Iowa 977, 979, 195 N. W. 881; Lucia v. Utterback (1924), 197 Iowa 1181, 1186, 198 N. W. 626; State v. Parenti (1925), 200 Iowa 333, 334, 202 N. W. 77; State v. Wenks (1925), 200 Iowa 669, 670, 202 N. W. 753; Hammer v. Utterback (1926), 202 Iowa 50, 52, 209 N. W. 522; State v. Korth (1927), 204 Iowa 667, 668, 215 N. W. 706; State v. Lambertti (1927), 204 Iowa 670, 672, 215 N. W. 752; State v. Bamsey (1929), 208 Iowa 796, 799, 223 N. W. 873 (certiorari denied in Bamsey v. State of Iowa (1929), 280 U. S. 595, 50 S. Ct. 40, 74 L. Ed. 642); State v. Rollinger (1929), 208 Iowa 1155, 1156, 225 N. W. 841; State v. Bourgeois (1930), 210 Iowa 1129, 1131, 229 N. W. 231.

In State v. Rowley (1933), 216 Iowa 140, 145, 248 N. W. 340; State v. Weltha (1940), 228 Iowa 519, 527, 292 N. W. 148, and Vilas v. Iowa State Board of Assessment and Review (1937), 223 Iowa 604, 615, 273 N. W. 338, there are found statements that might indicate that the majority of the court questioned the soundness of the rule announced in State v. Tonn, supra. However, we have not in any degree departed from our previous holding, and we trust that in our expressions as here made in the instant case we will again, in no uncertain language, indicate our established and definite rule.

The question that is before us on this appeal has been the subject of innumerable judicial opinions, and, as previously stated, there are two divergent holdings.

In the editorial comment noted in 88 A. L. R. (1934) 349, it is stated that the following states adhere to the rule of admissibility of evidence as complained of in the instant case: Alabama, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Iowa, Kansas, Louisiana, Maine, Massachusetts, Minnesota, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, South Carolina, Utah, Vermont, and Virginia. This makes a total of 26 states. Since the preparation of the note in 88 A. L. R., supra, the Supreme Court of Ohio in State v. Lindway (1936), 131 Ohio 166, 182, 2 N. E. 2d 490 (appeal dis-

missed in Lindway v. State of Ohio (1936), 299 U. S. 506, 57 S. Ct. 36, 81 L. Ed. 375), apparently allied itself with the majority rule and held that evidence obtained by an unlawful search was admissible in evidence and that the admission of such evidence did not violate the constitutional immunity from self-incrimination and from unreasonable searches and seizures. With the Ohio court taking the position it now has there are 27 state courts that adhere to the rule as expressed in our Tonn case. There are 18 states which hold that evidence of the character as presented in the instant case is inadmissible. These states are as follows: Florida, Idaho, Illinois, Indiana, Kentucky, Michigan, Mississippi, Missouri, Montana, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Washington, West Virginia, Wisconsin and Wyoming. The federal courts, following the Boyd case, supra, hold that evidence unlawfully obtained by federal officers is inadmissible.

This court, speaking through this majority opinion, is of the firm conviction that evidence of which the defendant complains is admissible and that our holding in State v. Tonn should be followed. We are conscious of the rights which were sought by our forefathers in writing into the Federal and State Constitutions the restriction as to unreasonable search and seizure. The wrongs sought to be guarded against, as shown by historical research, and which prompted the inclusion of the Fourth Amendment to our Federal Constitution, grew out of the issuance of general search warrants during the years of colonial development. It was to avoid a recurrence of this oppressive action that this amendment was demanded as an additional safeguard to the citizens of the several states from what was feared would be an oppressive Federal Government.

In this connection attention is called to the case of Commonwealth v. Wilkins (1923), 243 Mass. 356, 361, 138 N. E. 11, 13, where it is stated:

" "* * *. The Fourth Amendment to the federal Constitution does not apply to proceedings in the state courts. As was said in 1887 by Chief Justice Waite in Spies v. Illinois, 123 U. S. 131, 166, 8 Sup. Ct. 21, 24, (31 L. Ed. 80):

" 'That the first ten Articles of Amendment [to the United

States Constitution] were not intended to limit the powers of the state government in respect to their own people, but to operate on the national government alone, was decided more than a half century ago, and that decision has been steadily adhered to since.' ''

As evidence of the fact that the federal courts have in mind that their rule applies only to unlawful search by federal officers alone, we find that in the case of Myers v. United States, 8 Cir., Okla., 18 F. 2d 529, 530, it was held that evidence obtained by reason of an unlawful search by state officers was admissible in a federal prosecution. In this last case it is stated:

''Conceding, without deciding, that the search warrant was invalid as claimed, nevertheless the admissibility of the evidence found by the state officers acting thereunder is not affected, since no federal officer participated in the search or was in any way connected therewith. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Elam v. United States (C. C. A. 8) 7 F.(2d) 887.''

In the case of State v. Dillon (1929), 34 N. M. 366, 377, 281 P. 474, 479, 88 A. L. R. 340, 347, a very pertinent statement is made:

''Appellant is no less guilty because he has been the victim of an unlawful search. The unlawful search is still a trespass, though it has resulted in appellant's conviction. Appellant should still be punished, though entitled to compensation according to the circumstances of the case and the injury done.''

Cardozo, J., a recognized authority, when sitting on the Court of Appeals of New York, commented on the admissibility of evidence obtained by an illegal or unreasonable search. In People v. Defore (1926), 242 N. Y. 13, 19, 22, 23, 24, 150 N. E. 585, 587, 588, 589, he states:

''We must determine whether evidence of criminality, procured by an act of trespass, is to be rejected as incompetent for the misconduct of the trespasser.

''The question is not a new one. It was put to us more than 20 years ago in People v. Adams, 68 N. E. 636, 176 N. Y.

351, 63 L. R. A. 406, 98 Am. St. Rep. 675, and there deliberately answered. A search warrant had been issued against the proprietor of a gambling house for the seizure of gambling implements. The police did not confine themselves to the things stated in the warrant. Without authority of law, they seized the defendant's books and papers. We held that the documents did not cease to be competent evidence against him though the seizure was unlawful. * * *

"In times gone by, officialdom had arrogated to itself a privilege of indiscriminate inquisition. The statute declares that the privilege shall not exist. Thereafter, all alike, whenever search is unreasonable, must answer to the law. For the high intruder and the low, the consequences become the same. Evidence is not excluded because the private litigant who offers it has gathered it by lawless force. By the same token, the state, when prosecuting an offender against the peace and order of society, incurs no heavier liability. * * *

"We are confirmed in this conclusion when we reflect how far-reaching in its effect upon society the new consequences would be. The pettiest peace officer would have it in his power, through overzeal or indiscretion, to confer immunity upon an offender for crimes the most flagitious. A room is searched against the law, and the body of a murdered man is found. If the place of discovery may not be proved, the other circumstances may be insufficient to connect the defendant with the crime. The privacy of the home has been infringed, and the murderer goes free. Another search, once more against the law, discloses counterfeit money or the implements of forgery. The absence of a warrant means the freedom of the forger. Like instances can be multiplied. We may not subject society to these dangers until the Legislature has spoken with a clearer voice. In so holding, we are not unmindful of the argument that, unless the evidence is excluded, the statute becomes a form and its protection an illusion. This has a strange sound when the immunity is viewed in the light of its origin and history. * * * We do not know whether the public, represented by its juries, is today more indifferent to its liberties than it was when the immunity was born. If so, the change of sentiment without more does not work a change of remedy. Other sanctions, penal

and disciplinary, supplementing the right to damages, have already been enumerated. No doubt the protection of the statute would be greater from the point of view of the individual whose privacy had been invaded if the government were required to ignore what it had learned through the invasion. The question is whether protection for the individual would not be gained at a disproportionate loss of protection for society. On the one side is the social need that crime shall be repressed. On the other, the social need that law shall not be flouted by the insolence of office. There are dangers in any choice. The rule of the Adams Case strikes a balance between opposing interests. We must hold it to be the law until those organs of government by which a change of public policy is normally effected shall give notice to the courts that the change has come to pass.''

To those interested in a further review of the question presented in this case, reference is here made to the extensive notes found in the following citations: 24 A. L. R. 1408; 32 A. L. R. 408; 41 A. L. R. 1145; 52 A. L. R. 477; 88 A. L. R. 348, and 134 A. L. R. 819.

It is our considered judgment that the rule as expressed in State v. Tonn, supra, is sound, is protective of the rights of all citizens and that it should again be held to be the law of this state. Instead of injuring our constitutional rights the rule set forth in the Tonn case makes possible the preservation of our constitutional government. This rule does not make possible the weakening of our government by unlawful forces working from within. We further find that the other claimed errors as noted by defendant are without merit. By reason of our expressions and holdings herein made, the trial court is affirmed.— Affirmed.

MILLER, C. J., and STIGER, GARFIELD, BLISS, OLIVER, and HALE, JJ., concur.

SAGER and MITCHELL, JJ., dissent.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority wherein they affirm the holding of this court in the case of State v. Tonn, and respectfully dissent.

At the time that the opinion in State v. Tonn was handed down, a very able and elaborate dissenting opinion was filed by Mr. Justice Weaver. It might be better if I were to repeat here that dissent rather than to attempt to add anything to it, and I call upon the bench and bar of the state to again read that dissent in order that they may ascertain whether or not this court is right in the majority's present interpretation of this all-important case. The majority call attention to the fact that certain other state courts are committed to the opposite view but they fail to set out that many, if not most of the cases cited, are not really in point as they were decided by courts in states not having a constitutional guarantee identical with that of the Fourth Amendment to the National Constitution. I am aware of the fact that there are cases that hold that the Fourth Amendment to the Federal Constitution does not apply to proceedings in the state court but as I understand it, the Fourth Amendment to the Constitution of the United States was re-enacted as part of the Constitution of Iowa, Article I, Section 8. The Supreme Court of the United States, which generally has been considered pretty good authority, in its interpretation of the Fourth Amendment has in no uncertain words announced that it will not countenance a violation of this amendment and that the fruits of illegal and unlawful search shall not be available to the government.

I quote with approval from Justice Weaver's dissenting opinion in the Tonn case, at page 119 of 195 Iowa, page 540 of 191 N. W.:

"It seems little less than solemn mockery for us to protest our devotion to the 'sacred constitutional right,' or our virtuous purpose to rigidly enforce it, and in the same breath declare our approval of the admission of 'evidence without any inquiry as to how that evidence was obtained.' The principle so involved finds a suggestive parallel in the case of the candidate for office who maintains his equipoise on the question of prohibition by declaring himself in favor of the law, but opposed to its enforcement. The suggestion that the person whose rights are invaded by a wrongful search or seizure has his remedy in an action for damages against the individual committing the tres-

pass is scarcely worthy of the court which refuses to give him the protection to which he is entitled under the charter which is supposed to command the obedience of the judiciary, as well as of the private citizen. It is this growing disregard of fundamental rights and orderly methods of justice which has given rise to the infamies of the so-called 'sweat-box' and 'third-degree' practices which cast discredit upon our professions of loyalty to law. The reasoning which justifies those things, and justifies a rule by which the court will refuse to inquire into the means employed to obtain evidence, if carried to its logical results, would be equally effective to admit evidence procured by physical torture, and restore the rack and thumbscrew to the dignity of judicial aids in the prosecution of alleged criminals. True, torture has been nominally outlawed in civilized lands, and the court would undoubtedly so declare, were that concrete question presented for its consideration; but the legal and constitutional guaranties of protection against the use of the torture chamber are not a whit less sacred than those which guarantee each and every citizen against illegal searches and seizures.''

I have always understood that the Constitution protected all men, including those charged with a crime. The Constitution of Iowa guarantees all the citizens of this state against unreasonable search and seizure. It is as much a part of the Constitution of Iowa as any other part. By this decision, as I read it, that constitutional provision is made of no value. In saying that I am but following the Supreme Court of the United States when it says in the Silverthorne [251 U. S. 385, 392, 40 S. Ct. 182, 183, 64 L. Ed. 319, 321] and Weeks [232 U. S. 383, 393, 34 S. Ct. 341, 344, 58 L. Ed. 652, 656] cases:

"It reduces the Fourth Amendment to a form of words.''

I yield nothing to my brothers on the question of law enforcement but I deny that this is sufficient to sweep aside a constitutional provision. If the Constitution is in the way, then it should be amended in the manner therein provided. There is no provision in the Constitution for its amendment or nullification by sheriff, county attorney, attorney general, or even this court.

I would reverse this case and specifically overrule the case of State v. Tonn.

I am authorized to state that SAGER, J., joins in this dissent.