STATE OF IOWA ex rel. RAY HANRAHAN, County Attorney, appellee, v. ROBERT JOSEPH MILLER and COTTONWOOD CLUB, an Iowa corporation, appellants.

No. 49641.

(Reported in 98 N.W.2d 859)

OCTOBER 20, 1959.

Don J. Wilson and Walter F. Maley, both of West Des Moines, for appellants.

Ray Hanrahan, County Attorney, J. Peter Denato and John A. Harvey, Assistant County Attorneys, Polk County, Des Moines, for appellee.

PETERSON, J.—A rehearing having been granted appellee on a petition for further consideration of Division I of the opinion of this court, filed May 5, 1959, and appearing in this volume, page 1358, and in 96 N.W.2d 474, Division I thereof is withdrawn and the following is substituted.

The facts appear in the original opinion and we will not repeat them in detail. There are some conditions and facts however, which are peculiarly applicable to affirmance of the trial court, that should be stated.

On September 12, 1956, the sheriff's office raided the night club and key club located at Seventy-third Street and University Avenue in Polk County. This was in response to complaints which had been made concerning the maintenance of the busi-

ness. In addition to arresting Robert Joseph Miller, who was the secretary of the club and in charge of the place of business, the officers took and brought to the sheriff's office 138 bottles or partly filled bottles of liquor, together with the books and records kept in the establishment.

An indictment was returned against Mr. Miller under the provisions of section 123.3, Code of Iowa 1958. The section in substance is as follows: "It shall be unlawful to * * * sell, offer or keep for sale, possess and/or transport vinous, fermented, spirituous or alcoholic liquor, except beer as defined in chapter 124, * * * except upon the terms, conditions, limitations and restrictions as set forth herein."

In January of 1957 the case was tried to a jury and Mr. Miller was acquitted. The question in the case, and in Division I of former opinion, arises at this point. Defendant claims that because of his acquittal he was entitled to have the liquor returned to him, under provisions of section 751.23. If this was the conclusion of the procedure he would be correct. However, there is another chapter to the story.

On February 14, 1957, shortly after defendant Miller's acquittal, the county attorney filed a petition for abatement of the nuisance maintained at above location, against Robert Joseph Miller, Cottonwood Club, and the owner of the real estate.

The county attorney filed an application to hold the evidence consisting of the 138 bottles of liquor to be used as evidence in the trial of this cause. Defendant Miller filed resistance to the application, raising the question that he had been acquitted by the jury, and was entitled to return of the liquor. The court overruled the resistance and ordered the liquor held.

The criminal case was personal as against Mr. Miller. It was necessary that the State offer proof beyond reasonable doubt in order to convict him. The jury found him personally not guilty. This action is an action for injunction and abatement of a nuisance as provided in chapter 128. It involves not only Miller, but the Cottonwood Club and the owner of the real estate, neither of whom was involved in the criminal case. This case is similar to any other ordinary action in that it was only necessary for plaintiff to prove its case by a preponderance of the

evidence. The court found such preponderance, decreed the injunction, abatement of the nuisance, and destruction of the liquor.

The contention of appellants concerning section 751.23 (Return of Property) and Article I, section 8, Constitution of Iowa (Unreasonable Searches and Seizures) is such that their theory of *illegal seizure*, and use of the property as evidence in the abatement proceeding, forms the *real basis* of their complaint.

An early case in which the question of illegal seizure was considered is the case of State v. Tonn (1923), 195 Iowa 94, 107, 191 N.W. 530, 536. The case involved an indictment against the defendant for conspiracy to commit criminal syndicalism. After defendant was in jail the State had gone to his hotel and taken his suitcase in which he had a large quantity of "I.W.W." literature. After defendant's indictment and prior to the trial defendant filed petition for the return of such articles. The questions arising in the case were: First: Is such evidence admissible in view of the conditions under which it was taken by the State? Second: Should the court under such conditions return the property so taken? Defendant's petition for return of the property was overruled. On appeal this court said:

"The due enforcement of criminal law would be most seriously handicapped in many instances, if not wholly crippled, by a strict adherence to the rule contended for by appellant. The exhibits taken from appellant's suitcases and offered in evidence upon the trial of this case were relevant to the question involved therein. They were, therefore, properly admissible, even though it is conceded that they were obtained by a search and seizure without warrant or strict legal authority. In this connection, it is also, perhaps, proper to observe that the constitutional provision applies only to 'unreasonable searches and seizures.'"

It is true the rule has not been approved in the Federal Court. In State ex rel. Kuble v. Bisignano, 238 Iowa 1060, 1066, 28 N.W.2d 504, 507, referring to the question of seizure without search warrant, we said: "The argument overlooks the fact that our court has definitely rejected the rule of the United States Supreme Court (Boyd v. United States, 116 U. S. 616, 6 S. Ct.

524, 29 L. Ed. 746), holding evidence incompetent if obtained by an unlawful search. State v. Tonn [supra]."

This court has consistently and repeatedly followed the pronouncement in the Tonn case. State v. Gorman (1923), 196 Iowa 237, 239, 194 N.W. 225; Joyner v. Utterback (1923), 196 Iowa 1040, 1044, 195 N.W. 594; State v. Rowley (1923), 197 Iowa 977, 195 N.W. 881; Lucia v. Utterback (1924), 197 Iowa 1181, 1186, 198 N.W. 626; State v. Parenti (1925), 200 Iowa 333, 334, 202 N.W. 77; State v. Wenks (1925), 200 Iowa 669, 670, 202 N.W. 753; Hammer v. Utterback (1926), 202 Iowa 50, 52, 209 N.W. 522; State v. Korth (1927), 204 Iowa 667, 668, 215 N.W. 706; State v. Lambertti (1927), 204 Iowa 670, 672, 215 N.W. 752; State v. Rollinger (1929), 208 Iowa 1155, 1156, 225 N.W. 841; State v. Nelson (1941), 231 Iowa 177, 184, 300 N.W. 685, 689; State v. Bradley (1942), 231 Iowa 1112, 3 N.W.2d 133; State ex rel. Kuble v. Bisignano (1947), supra.

In State v. Nelson, supra, the court said: "It is our considered judgment that the rule as expressed in State v. Tonn, supra, is sound, is protective of the rights of all citizens and that it should again be held to be the law of this state. Instead of injuring our constitutional rights the rule set forth in the Tonn case makes possible the preservation of our constitutional government. This rule does not make possible the weakening of our government by unlawful forces working from within."

A question somewhat similar to the question in this case was considered and decided in the cases of Touch v. Bonner, 201 Iowa 466, 205 N.W. 751, and State ex rel. Threlkeld v. Osborne, 207 Iowa 636, 638, 223 N.W. 363, 364. In each case defendant had been acquitted in the criminal case and pleaded res adjudicata in the injunction and abatement cases.

In the latter case this court said: "An entirely different rule prevails in the trial of a criminal action than in a suit in equity for an injunction. The one requires proof beyond a reasonable doubt; the other, by a preponderance of the evidence. In the case of an action for an injunction, under the statute, evidence of the general reputation of the place is admissible. Section 2022, Code of 1927. Such is not the case in a criminal prosecution for maintaining a nuisance. The action in equity to

enjoin a liquor nuisance may be brought by the county attorney, 'or any citizen of the proper county may institute and maintain such a proceeding in his name.' Section 2017. An indictment for the maintenance of a liquor nuisance can only be instituted in the method provided for the prosecution of criminal actions. It is obvious that the determination of one of such proceedings is not a bar to the prosecution of the other."

In appellants' original argument they cited State ex rel. Remley v. Meek (1900), 112 Iowa 338, 84 N.W. 3, 51 L. R. A. 414, 84 Am. St. Rep. 342, and State v. Cobb and Certain Intoxicating Liquors (1904), 123 Iowa 626, 99 N.W. 299. These were overruled by the Tonn case, which is now supported by many later cases. In their resistance to appellee's petition for rehearing they cite only one case: State v. Kroll and Certain Intoxicating Liquors, 244 Iowa 173, 180, 55 N.W.2d 251, 255. On broad principles the Kroll case does not support appellants. It is, in fact, favorable to appellee. Somewhat the same questions were raised as appear in the case at bar. The only difference was that the articles were taken in the case pertaining to abatement of a nuisance and the question was whether the court could order the seized articles held for use in pending criminal action. The court stated:

"Although the record does not show that there was an arrest made at the time of the seizure of the liquor in question, yet where subsequent criminal proceedings are instigated we see no reason why property of the plaintiff seized cannot and should not be held for use in such a case."

The cases cited clearly establish the policy in Iowa. The same policy is in effect in about thirty other states. The question has had consideration recently in United States v. Gramer, 191 F.2d 741, 27 A. L. R.2d 1132. Both the cases following the Federal rule and the cases following the Iowa rule are considered. Three paragraphs in the text as to cases from other states, supporting the Iowa rule, are pertinent. They are as follows (pages 1148, 1149 of 27 A. L. R.2d):

"The acquittal of the defendant's watchman, in charge of its fish trap, on the criminal charge of operating the trap during the closed season, was held in United States v. Alaska Pacific

Fisheries (1926) 7 Alaska 506, not to be a bar to a subsequent action for the condemnation of the trap, the court pointing out that the parties to the two actions were not the same, and that the criminal action required proof of guilt beyond a reasonable doubt, while the civil action for condemnation would be decided by the preponderance of evidence only.

"A judgment of acquittal in a criminal case in which the manager of a corporation, owner of a number of gambling devices, had been charged with keeping and using the same devices for the purpose of gambling or playing at games of chance was held in Approximately Fifty-nine Gambling Devices v. People (1942) 110 Colo. 82, 130 P.2d 920, not to be res judicata in a subsequent proceeding for the condemnation of the gambling devices, the court saying that the same parties were not involved, the evidence and the degree of proof required were not the same, and that no constitutional right to a trial by jury was available in the condemnation proceeding. * * *

"A verdict finding the drivers of the petitioner's truck not guilty on a charge of illegally transporting intoxicating liquors was held in Caneperi v. State (1936) 169 Tenn. 472, 89 S.W.2d 164, not to be binding upon the trial judge in ruling upon a petition seeking the return of the liquor which was being transported, the court saying that it was not necessary to determine the considerations which influenced the jury in reaching an acquittal, since that verdict was a finding only as to the guilt of the individuals, and not necessarily that the liquor was not itself in illegal transportation."

The question before us is whether we shall nullify and overrule a pronouncement of law which has been in effect in our State for over thirty-five years; has been affirmed and reaffirmed in many cases; and has served a useful purpose in the administration of our criminal law. Or shall we return to the narrow, unsatisfactory and difficult situation of an age long since past. On second consideration, and as a result of the rehearing, the majority is now of the opinion that the rule adopted in the Tonn case and followed in many later cases should not be overruled.

Since the County Attorney states there is no objection to return of the books and records, the Sheriff may return them to the Cottonwood Club, or to Robert Joseph Miller, its secretary. The order of the trial court as to destruction of the liquor by the Sheriff shall become effective promptly.—Affirmed.

LARSON, C. J., and BLISS, OLIVER, GARFIELD, HAYS, THOMPSON, and THORNTON, JJ., concur.

GARRETT, J., dissents.

GARRETT, J. (dissenting)—I respectfully dissent. I am unable to concur in the majority opinion in certain respects. The decision in this case, as reported in 250 Iowa 1358, 96 N.W.2d 474, disposed of all issues in this case except one. The trial court enjoined and abated the liquor nuisance involved, enjoined the parties from committing further liquor nuisances, assessed a mulct tax of $600 and ordered the seized liquor condemned. We affirmed the trial court in all respects except that, for reasons set out in the original opinion, the seized liquors were ordered returned to defendant Miller.

If some of the liquor seized without a warrant did not bear the Iowa Liquor Commission seals, it should not have been ordered returned as it was contraband. If some of the liquor did not belong to Miller and if he had no right to the possession of it, such liquor should not be returned to him. If any of it belonged to the other defendants it should not be returned to defendant Miller.

It was clearly not improper to use the liquor, although unlawfully seized by officers of the law, as evidence in this case.

A different question arises where the State of Iowa sells liquor, properly stamped, to one who keeps it in his possession and who is indicted, tried and acquitted by a jury of the crime defined by section 123.3 of the 1958 Code of Iowa.

The defendant Miller was indicted under this section, which reads as follows: "General prohibition. It shall be unlawful to manufacture for sale, sell, offer or keep for sale, possess and/or transport vinous, fermented, spirituous, or alcoholic liquor, except beer as defined in chapter 124, or as the same may hereafter

be amended for any purpose whatsoever, except upon the terms, conditions, limitations and restrictions as set forth herein."

The jury, by its verdict, said Miller was not guilty of selling, offering or keeping for sale, possessing or transporting alcoholic liquors for any unlawful purpose whatsoever. The jury by its verdict said in effect that he had certain liquor and that he did not use it for any illegal purpose. That matter was then adjudicated if a jury verdict can adjudicate anything.

There was no evidence that others used any of this particular liquor in any manner or for any purpose. If there was evidence this liquor belonged to Miller but others used it for illegal purposes then it should be condemned. None of this liquor is specifically identified with any other person.

Admittedly it was wrongfully seized under section 751.23. I am not interested in a rule of evidence which says that a certain quantum of proof is required in one case and because a lesser amount is required in the other it is therefore admissible.

The majority cite cases where different parties are involved and in so far as that is true they are not in point. I would not wish to see the rule of the case of State v. Tonn, cited by the majority, abrogated but it does not go to the point involved here.

It is my view that as to liquor identified only with Miller and used as evidence against him in the criminal case there was an adjudication, and that liquor, and that only, should be returned to him.

I deplore the disposition of courts at times to assume the role of reformers and prosecutors. I would prefer to see them administer the Constitutions and the laws as they are written and intended to be administered and I would give to the verdicts of juries the credit and effect to which they are entitled even though I might disagree with what they do.

I would reverse as to Division I.