WATERMAN, Justice
(dissenting).
I respectfully dissent. I would follow the unanimous decision in United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), to affirm our court of appeals and district court decisions upholding the search of Short’s residence. The majority’s opinion today is wrongly decided for the reasons set forth in Justice Zager’s dissent, which I join in part. I write separately to reemphasize my disagreement with our court’s departure from well-settled Fourth Amendment precedent and to reiterate my view that State v. Baldon and State v. Ochoa are plainly erroneous for the reasons explained by Justice Mansfield in his Baldon dissent, which I joined. See State v. Baldon, 829 N.W.2d 785, 835-47 (Iowa 2013) (Mansfield, J., dissenting).[10] But, I agree with *508 Justice Zager’s conclusion that the search of Short’s residence can be upheld under those decisions. And, I join in Justice Mansfield’s separate dissent in this case, which addresses the majority’s ten “established principles of independent state constitutional law.”
The majority neglects to mention that Short had a lengthy criminal record, including multiple felony convictions. He had served time in prison for robbery. On March 31, 2011, he pled guilty to his fourth theft-related offense and, in lieu of incarceration, received a generous sentence of probation on the condition that his residence could be searched without a warrant any time a law enforcement officer had reasonable grounds to believe contraband was present. Consent-to-search clauses have commonly been used in parole and probation agreements to deter misconduct and facilitate detection of wrongdoing. Less than two months later, while still on probation, Short committed the crime at issue in this case by burglarizing a home, taking two flat-screen televisions, jewelry, and a $100 gift card to Minerva’s Restaurant. He used the gift card there and signed the receipt. The waitress and manager later identified Short from a photograph. A magistrate found probable cause to search his residence and issued a search warrant, which all parties acknowledge was invalid due to an out-of-date address. The deputies, based on inaccurate advice during a phone call with the magistrate, wrote in the new address, executed the amended warrant, and found the stolen property at Short’s residence. The district court, following Knights, correctly upheld the search based on Short’s probation agreement and diminished expectations of privacy as a felon under supervision. I disagree with the majority’s conclusion that Short has the same expectations of privacy as ordinary Iowans. It is unfortunate the majority, as it did in Baldón, has again failed to enforce an offender’s consent-to-search provision, depriving our state’s corrections program of an important tool to encourage parolees and probationers to obey the law.
As in several other recent decisions erroneously decided by this majority, “[t]he validity of this consent search is solidly grounded on Fourth Amendment search and seizure caselaw, and there is no good reason to hold otherwise under article I, section 8 of the Iowa Constitution.” State v. Pals, 805 N.W.2d 767, 784 (Iowa 2011) (Waterman, J., dissenting). Today’s majority, as in Pals, Baldón, and Ochoa, once again uses the Iowa Constitution to evade well-settled Fourth Amendment precedent without setting forth any principled basis for construing Iowa’s nearly identically worded search and seizure provision to require greater restrictions on the law enforcement community and elected branches. The majority fails to articulate any standards for interpreting the same constitutional protections differently under federal and state law. The majority is willing to reach a different result based simply on its own conclusion that particular decisions of the United States Supreme Court are not “persuasive.” Persuasion is in the eye of the beholder. More restraint is warranted when interpreting our state constitution, which by design is so difficult for the people to amend.[11]
*509 To reach its result, the majority takes an inconsistent approach to error preservation[12] and rests its analysis on a false premise — that State v. Cullison, a parolee-search case, was decided four decades ago under the search and seizure provision in article I, section 8 of the Iowa Constitution. 173 N.W.2d 533, 534-35 (Iowa 1970). That provision is mentioned nowhere within the four corners of the majority or dissenting opinions in that case. Rather, as further explained in Justice Zager’s dissent today, Cullison was decided under the Fourth Amendment and is no longer good law after Knights. Pull on the loose thread of Cullison, and the majority’s analysis unravels.[13]
References to “the sanctity of the home” do not justify the majority’s departure from settled Fourth Amendment precedent.[14] Cf. Baldon, 829 N.W.2d at 841 (Mansfield, J., dissenting) (“If the ‘sanctity of the home’ trumps an offender’s status, as we held in Ochoa, why has this court repeatedly upheld sex offender residency restrictions?”). The home has sanctity in all fifty states. This case is not an example of state courts of last resort acting as *510 laboratories developing constitutional doctrine in unsettled areas, such as same-sex marriage, before the issue is squarely decided by the Supreme Court. Rather, our court today departs from a unanimous decision of that Court, Knights, 534 U.S. at 122, 122 S.Ct. at 593, 151 L.Ed.2d at 507, that is widely followed by our sister states under their state constitutions.[15] The majority cites no decision of any other state supreme court declining to follow Knights under its state constitution. Nor does the majority marshal any academic criticism of Knights.
The majority’s departure from settled Fourth Amendment caselaw inevitably leads to unpredictability, confusion, and instability in the law, with multiple sets of rules applying to the same conduct. In my view, we should return to our traditional practice of interpreting article I, section 8 of the Iowa Constitution to have the same meaning as the Fourth Amendment, as the framers of our state constitution intended. See Pals, 805 N.W.2d at 786-87 (Waterman, J., dissenting). And, we should return to our long-standing tradition of following the decisions of the highest court in the land when, as here, no departure is warranted by any difference in the text, structure, or history of the Iowa provision.
I dissent to fire another warning shot across the bow of the ship the majority steers in the wrong direction without a navigation system.
I. We Should Construe Article I, Section 8 of the Iowa Constitution to Have the Same Meaning as the Fourth Amendment.
The Fourth Amendment to the United States Constitution[16] and article I, section *511 8 of the Iowa Constitution[17] are worded virtually identically and provide the same protection against unreasonable searches and seizures. Compare U.S. Const. Amend. IV, with Iowa Const, art. I, § 8. Our court, like most state supreme courts, has traditionally followed federal precedent in construing the same language in the state constitution. See Robert F. Williams, The Law of American State Constitutions, 194-95 (2009) (noting a “clear majority” of cases “decide to follow, rather than diverge from, federal constitutional doctrine”). Decisions of the United States Supreme Court resolve issues that are briefed and argued by the best lawyers in the country, after those issues have first been thoroughly vetted in the federal courts of appeals. Our nation’s Supreme Court decisions are binding on all federal and state courts applying the Fourth Amendment and, unless plainly erroneous, should be followed to interpret nearly identical language in the state constitution. The Illinois Supreme Court reaffirmed its adherence to federal cases to interpret its state’s constitution, stating:
This limited lockstep approach is not a surrender of state sovereignty or an abandonment of the judicial function. It is, instead, based on the premise that the drafters of the [state] constitution and the delegates to the constitutional convention intended the phrase “search and seizure” in the state document to mean, in general, what the same phrase means in the federal constitution.
People v. Caballes, 221 Ill.2d 282, 303 Ill.Dec. 128, 851 N.E.2d 26, 45 (2006). This is equally true in Iowa.
The timing of the adoption of the Iowa Constitution[18] and the use of nearly identical wording confirm the framers intended article I, section 8 to duplicate the same constitutional protection against unreasonable searches and seizures found in the Fourth Amendment. Pals, 805 N.W.2d at 786 (Waterman, J., dissenting) (noting “article I, section 8 was the Fourth Amendment ‘reenacted’ in Iowa to apply to the state” (quoting State v. Nelson, 231 Iowa 177, 185, 300 N.W. 685, 689 (1941) (Mitchell, J., dissenting))); see also People v. Pickens, 446 Mich. 298, 521 N.W.2d 797, 806 (1994) (commenting “[i]f the convention or ratifiers had intended to alter the meaning of this provision, we can presume they would have done so by express words” (internal quotation marks omitted)). Other state supreme courts have reached the same conclusion.[19]
*512 Today’s majority cites no historical evidence that Iowa’s founders intended the Iowa search and seizure provision to impose greater restrictions on law enforcement. It is, therefore, no surprise that our state’s search and seizure caselaw has long tracked with Fourth Amendment caselaw because we have consistently construed article I, section 8 to have the same meaning. See, e.g., State v. Breuer, 577 N.W.2d 41, 44 (Iowa 1998) (“‘[T]he language of those clauses is substantially identical and we have consistently interpreted the scope and purpose of article I, section 8, of the Iowa Constitution to track with federal interpretations of the Fourth Amendment.’ ” (quoting State v. Showalter, 427 N.W.2d 166, 168 (Iowa 1988))).[20]
*513 Only recently has our court diverged from this precedent. This court first overtly diverged from the modern-day search and seizure decisions of the United States Supreme Court in State v. Cline, 617 N.W.2d 277, 293 (Iowa 2000), abrogated on other grounds by State v. Turner, 630 N.W.2d 601, 606 n. 2 (Iowa 2001). The Cline court stated, “[W]e strive to be consistent with federal constitutional law in our interpretation of the Iowa Constitution, but we ‘jealously guard our right and duty to differ in appropriate cases.’” 617 N.W.2d at 285 (quoting State v. Olsen, 293 N.W.2d 216, 220 (Iowa 1980)). Cline held the good-faith exception to the exclusionary rule recognized by the United States Supreme Court did not exist under the Iowa Constitution. Id. at 293. Cline, however, rejected a federal exception to a judge-made remedy for constitutional violations; Cline did not impose greater restrictions on the power of police to conduct warrantless searches. See Davis v. United States, 564 U.S. -, -, 131 S.Ct. 2419, 2426, 180 L.Ed.2d 285, 293 (2011) (noting exclusion of evidence “is not a personal constitutional right,” but rather is a court-created prudential remedy (internal quotation marks omitted)).[21]
Our court’s next retreat from Fourth Amendment precedent was State v. Ochoa, 792 N.W.2d 260, 287-91 (Iowa 2010). The Ochoa court held that a warrantless search of a parolee’s motel room violated the search and seizure provision of the Iowa Constitution, even though it was permitted under the Fourth Amendment based on United States Supreme Court precedent. Id. at 291. The Ochoa court proclaimed:
In order to resolve any inconsistency in our prior' cases, we now hold that, while United States Supreme Court cases are entitled to respectful consideration, we will engage in independent analysis of the content of our state search and seizure provisions. A Fourth Amendment opinion of the United States Supreme Court, the Eighth Circuit Court of Appeals, or any other federal court is no more binding upon our interpretation of article I, section 8 of the Iowa Constitution than is a case decided by another state supreme court under a search and seizure provision of that state’s constitution. The degree to which we follow United States Supreme Court precedent, or any other precedent, depends solely upon its ability to persuade us with the reasoning of the decision.
Id. at 267 (emphasis added). The Ochoa court’s chest-thumping assertion of judicial power marked a dramatic departure from our court’s long-standing adherence to settled Fourth Amendment precedent on the validity of searches. This new mindset metastasized into Pals,[22] Baldón, and today’s decision.[23]
*514 Contrary to Ochoa, I consider a United States Supreme Court decision on the Fourth Amendment to be of significantly greater precedential weight than a decision by another state supreme court. Why? Because, to restate the obvious, the United States Supreme Court’s holdings are binding on all state and federal courts applying the Fourth Amendment, and our state constitution’s search and seizure provision has the same meaning as the federal provision.
It is indeed our court’s role to interpret the Iowa Constitution, but I part company with the majority’s stated willingness to impose greater restrictions on police and our legislature under the Iowa Constitution’s search and seizure provision merely by deeming the Supreme Court’s Fourth Amendment precedent unpersuasive.
A bare disagreement with the United States Supreme Court’s interpretation of the Federal Constitution “imparts no sound doctrinal basis to impose a contrary view under the pretext of separately interpreting our State Constitution. Our Constitution is more than just a device to reject or evade federal decisions. ...”
State v. Kottman, 707 N.W.2d 114, 119-20 (S.D.2005) (quoting State v. Schwartz, 689 N.W.2d 430, 438 (S.D.2004) (Konenkamp, J., concurring in judgment)).
The majority, citing two law professors, perjoratively labels our court’s long-standing practice of following Fourth Amendment precedent to be an “aggressive maxi-malist” approach and a “precommitment device preventing independent examination of the facts and law.” No court until now has used those labels to describe the approach followed by most state supreme courts. I doubt any of the justices of our court who retired before Ochoa, including jurists such as C. Edwin Moore, Clay Le-Grand, or Harvey Uhlenhopp, would have agreed those labels accurately describe their approach to search and seizure law. Stare decisis is a “precommitment device,” is it not?[24] By contrast, the majority expressly disavows following any specific standards or criteria for determining when to depart from settled Fourth Amendment *515 precedent. What label best describes the majority’s approach today?
The majority’s recent departures from our court’s numerous decisions following settled federal constitutional precedent undermine the predictability and stability of our law. Revisiting settled precedent whenever four justices of this court find prior cases “unpersuasive” leads to serious and troubling repercussions. Too many long-settled rules are put back into play. This subverts the goals served by the doctrine of stare decisis. A recent admonition by the Supreme Court is worth repeating.
[T]his Court does not overturn its precedents lightly. Stare decisis, we have stated, “is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.” Although “not an inexorable command,” stare decisis is a foundation stone of the rule of law, necessary to ensure that legal rules develop “in a principled and intelligible fashion.” For that reason, this Court has always held that “any departure” from the doctrine “demands special justification.”
Michigan v. Bay Mills Indian Cmty., — U.S. -, -, 134 S.Ct. 2024, 2036, 188 L.Ed.2d 1071, 1086 (2014) (citations omitted); see also State v. Walker, 804 N.W.2d 284, 296 (Iowa 2011) (“Stare decisis is a valuable legal doctrine which lends stability to the law....” (Internal quotation marks omitted.)); Kiesau v. Bantz, 686 N.W.2d 164, 180 (Iowa 2004) (Cady, J., dissenting) (“It nearly goes without saying that the doctrine of stare decisis is one of the bedrock principles on which this court is built. It is an important restraint on judicial authority and provides needed stability in and respect for the law.”); cf. State v. Brown, 356 Ark. 460, 156 S.W.3d 722, 735-36 (2004) (Glaze, J., dissenting) (concluding majority violated Arkansas precedent by giving state search and seizure provision different meaning than Fourth Amendment).
The majority injects further instability into our law through its mantra that our court “reserve[s] the right to apply the standard in a [different] fashion.” I am not sure what that means. Does this approach make predicting the law a guessing game?
The legitimacy of our court’s decisions rests in part on the perception and reality that we are applying the rule of law, not our personal preferences for what the law should be. As Justice Frankfurter admonished, we are not “justified in writing [our] private notions of policy into the Constitution, no matter how deeply [we] may cherish them or how mischievous [we] may deem their disregard.” W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 647, 63 S.Ct. 1178, 1189, 87 L.Ed. 1628, 1642 (1943) (Frankfurter, J., dissenting). We are on solid ground interpreting our state constitution consistently with United States Supreme Court decisions construing the parallel provision in the Federal Constitution. We are on shaky ground when we take a different path simply because we find the federal interpretations “unpersuasive.”
“If these principles of constitutional construction were to be ignored critics not unreasonably would declare it judicial arrogance for courts to say that their power to construe constitutions was limited only by the restraints courts might impose upon themselves. Courts are not legislatures, and neither are they constitutional framers and adopters of constitutions. What Justice Powell said in another context is not without relevance: ‘We should be ever mindful of the contradictions that would arise if a democracy were to permit general over *516 sight of the elected branches of government by a nonrepresentative, and in large measure insulated, judicial branch.’ ”
Caballes, 303 Ill.Dec. 128, 851 N.E.2d at 36 (quoting People v. Tisler, 103 Ill.2d 226, 82 Ill.Dec. 613, 469 N.E.2d 147, 161 (1984) (Ward, J., concurring)). Returning to our traditional approach will restore legitimacy to our constitutional adjudication in this area.
The majority, by diverging from settled federal precedent, contributes to a Tower of Babel-like cacophony of varying state court interpretations of nearly identically worded search and seizure provisions. Our court is now part of the problem, not the solution. As one commentator observed, “state constitutional law today is a vast wasteland of confusing, conflicting, and essentially unintelligible pronouncements.” James A. Gardner, The Failed Discourse of State Constitutionalism, 90 Mich. L.Rev. 761, 763 (1992) [hereinafter Gardner]. Adherence to well-settled Fourth Amendment precedent promotes uniformity between state and federal search and seizure law. Our sister states have recognized the importance of uniformity in state and federal interpretations of the same constitutional language.[25] Diverging from settled federal precedent results in two sets of rules and confusion among the bench and bar and law enforcement over which rules to follow. It also leads to inconsistent results, whereby evidence from the same arrest or crime could be admissible in federal court, but not state court. See Baldón, 829 N.W.2d at 842 (Mansfield, J., dissenting) (“[W]e now have two different sets of search and seizure rules in Iowa.”).
The Iowa bench and bar and the law enforcement community are whipsawed by our court’s end runs around well-settled Iowa and Federal Fourth Amendment precedent. Federal Fourth Amendment law has been comparatively stable. See Davis, — U.S. at-, 131 S.Ct. at 2433, 180 L.Ed.2d at 301 (“Decisions overruling this Court’s Fourth Amendment precedents are rare.”).[26] The Iowa bench and *517 bar should be able to rely on settled federal precedent directly on point in construing the parallel provisions of the Iowa Constitution. Will Iowa criminal defense attorneys now feel compelled to argue divergence from Fourth Amendment precedent on any issue to avoid a claim of ineffective assistance of counsel, malpractice, or disciplinary charges for neglect or incompetence — even if the position taken is contrary to long-settled caselaw — merely because a majority of our court might find the precedent unpersuasive? See Baldón, 829 N.W.2d at 816 (Appel, J., concurring specially) (citing cases finding defense counsel ineffective or guilty of “malpractice” for failing to argue state constitutional claims). Must Iowa lawyers do a fifty-state survey and review of the academic literature in every case to brief why we should reject a decision of the highest court in the land? Or, why bother if a majority of our court can disregard any precedent?
II. We Should Articulate Standards for Departing from Settled Federal Precedent When Construing the Same Provisions in the Iowa Constitution.
We, of course, have the interpretive power under our state constitution to depart from federal precedent. Just because we can depart does not mean we should. I disagree with the majority’s assertion that our court should not establish “criteria” for determining when to diverge from federal interpretations. In my view, our departures should be based on articulated standards that mean something more than a salute to Iowa “values” or a bald conclusion the federal precedent is “unpersuasive.” See Schwartz, 689 N.W.2d at 444 (recognizing that the “values” rationale “has a high potential for misuse”); Gardner, 90 Mich. L.Rev. at 818 (“[T]he notion of significant local variations in character and identity is just too implausible to take seriously as the basis for a distinct constitutional discourse.”).
The battle lines for this debate are drawn in the divided decision of the South Dakota Supreme Court in Schwartz. See generally 689 N.W.2d at 437-45; id. at 445-49 (Sabers, J., dissenting). In Schwartz, defendants were convicted of methamphetamine possession based on evidence obtained in a warrantless search of their curbside trash. Id. at 433. The defendants argued the South Dakota Constitution prohibited the warrantless search and seizure of their trash. Id. at 432. As in Iowa, the search and seizure provision of the South Dakota Constitution was worded nearly identically to the Fourth Amendment. See id. at 435 n. 1.
The United States Supreme Court squarely addressed the question of the applicability of Fourth Amendment protections to curbside trash in California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). Greenwood held that persons who place their garbage for public collection do not have a reasonable expectation of privacy over its contents. Greenwood, 486 U.S. at 40-41, 108 S.Ct. at 1629, 100 L.Ed.2d at 36-37. The Schwartz defendants argued the South Dakota Constitution should be construed to provide broader protection. 689 N.W.2d at 435. The Schwartz plurality noted a majority of state courts follow Greenwood and applied essentially the same test as Greenwood to reach the same result under the South Dakota Constitution. Id. The Schwartz plurality observed, “Those jurisdictions *518 who have decided to part company with the Greenwood decision have generally relied upon unique language in their state constitution to extend protection to trash intended for collection.” Id. Two dissenting justices found Greenwood unpersuasive and advocated for greater protection under the South Dakota Constitution. Id. at 446 (Sabers, J., dissenting).
Two concurring opinions called for the type of analysis lacking in today’s' majority opinion and in Baldón, Pals, and Ochoa. See Schwartz, 689 N.W.2d at 437 (Zinter, J., concurring); id. at 437-45 (Konenkamp, J., concurring in judgment). Justice Zin-ter admonished counsel in future cases “to present some interpretive methodology that leads to principled constitutional interpretation when they assert that essentially identical language in our Constitution means something different than the United States Constitution.” Id. at 437 (Zinter, J., concurring). A concurring opinion by Justice Konenkamp elaborated, stating: “Whether we can more broadly interpret our similarly worded state constitutional provisions should be decided on a neutral set of divergence standards.” Id. at 438 (Konenkamp, J., concurring in result). This concurrence warned that “[wjidely divergent interpretations of similar provisions create unpredictability and confusion in the law.” Id. at 439. His concurrence went on to propose:
In deciding whether a state constitutional provision should receive a divergent interpretation, we should examine (1) the text of the provision at issue; (2) the territorial, legal, and constitutional history surrounding the provision; (3) the structural differences in the State and Federal Constitutions; and (4) the matters of unique state tradition or concern that bear on the meaning of the provision.
Id. at 440.[27] Justice Konenkamp, after discussing these “divergence standards,” joined the majority opinion following Greenwood. Id. at 441414.
Justice Konenkamp’s thorough analysis provides a useful roadmap for determining whether an independent state constitutional adjudication should lead to a' different result than federal precedent. “Constitutional analysis always begins with the text.” Id. at 441. His concurrence noted, when the South Dakota Constitution was adopted in 1889, “the Federal Bill of Rights had no binding effect on state courts,” suggesting that “the adoption of many of the provisions [in the] State Bill of Rights ... may have reflected an intention primarily to duplicate corresponding federal provisions.” Id. He observed that a difference in wording would provide the best argument for a difference in interpretation. Id. Faced with a “substantively identical” provision, he concluded that *519 “[n]othing in the language itself indicates that the framers intended the state prohibition against unreasonable searches and seizures to be broader than the federal prohibition in the Fourth Amendment.” Id. at 442. He ended with an appropriate cautionary admonition regarding independent state constitutional adjudication:
In summary, to ensure that our constitutional jurisprudence develops in a methodical and authentic way, we must be guided by a set of interpretive principles. Authoritative and neutral analysis of South Dakota’s Constitution cannot advance from episodic and reactionary borrowing of results from other state courts. Litigants must demonstrate that the text, history, or purpose of a South Dakota constitutional provision supports a different interpretation from the corresponding federal provision. If there is any place where the principle of judicial restraint ought to deter us, it is in the area of constitutional divergence. As Professors Whitebread and Slobogin warn, “wide-open state [court] activism runs counter to judicial decisionmak-ing goals of clarity, efficiency, and principled reasoning.... [Such activism] is bad policy because it promotes uncertainty, questionable duplication of review, and result-oriented jurisprudence.” These words offer valid cautions, but, in the right case, they should not discourage us from a vigorous analysis of South Dakota’s Constitution.
Id. at 445 (emphasis added) (citation omitted). The foregoing admonition applies with equal force here.
Our court likewise should not depart from well-settled federal precedent without good reason. Justice Konenkamp’s “neutral set of divergence standards” provides guidance to those who would advocate construing an Iowa constitutional provision differently than its federal counterpart. Such standards are missing in the majority’s analysis today and in Ochoa, Pals, and Baldón. Those standards warrant no departure from Knights and its Fourth Amendment progeny in this case.
Ill: Conclusion.
For generations, in countless other decisions, our court has construed the search and seizure provision in the Iowa Bill of Rights to be of the same purpose, scope, and effect as the Fourth Amendment. It is this long-standing tradition of adherence to settled federal precedent from which our court has diverged, sporadically, since Ochoa was decided in December 2010. We do our job best as a state supreme court by applying our own pre-Ocfeoa jurisprudence, which holds article I, section 8 of the Iowa Constitution has the same meaning as the Fourth Amendment. We should return to relying on well-settled federal precedent on search and seizure issues.
For these reasons, and the reasons set forth in the dissents of Justices Mansfield and Zager, I would affirm the decision of the court of appeals and judgment of the district court upholding the search of Short’s residence.
MANSFIELD, J., joins this dissent.

. The majority opinion today and in Baldón reviewed the use of evidence to prove new *508 crimes. See Baldón, 829 N.W.2d at 788-89. Both opinions leave open the question whether the State may invoke an offender's violation of the consent-to-search term in a parole or probation agreement in revocation proceedings.

. The people of Florida amended their state constitution's search and seizure provision in 1982 to require conformity with Supreme Court decisions interpreting the Fourth Amendment. Fla. Const, art. I, § 12 ("This right shall be construed in conformity with *509 the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.”). This amendment was in response to decisions of the Florida Supreme Court that suppressed evidence of crimes admissible under federal interpretations of the Fourth Amendment. See id. § 12, cmt. to 1982 amend.; State v. Hume, 512 So.2d 185, 187 (Fla.1987) (noting "the amendment to section 12 was intended, in part, to overrule our decision in [State v.] Sarmiento[, 397 So.2d 643 (Fla. 1981) ]”).

.The majority wrongly concludes the State failed to preserve error on the consent issue because the State used the term "waiver” in arguing the consent-to-search provision in Short’s probation agreement should be enforced. The majority faults the State for not developing the record on consent in the district court. The probation agreement is part of the record. What further factual development is needed to decide the issue here? And, why fault the State for not developing a better record on consent in district court when Short did not argue at that time for broader rights under the Iowa Constitution? As Justice Zager’s dissent further explains, the consent-to-search provision is in play in this appeal and supports affirmance of the rulings upholding the search. But, let us take the majority at its word. The saving grace is that, if the consent issue was waived by the State in this case, then the majority does not decide it, and the State remains free in future cases to argue for enforcement of probation consent-to-search agreements.
The majority asserts no party "asks us to revisit” Baldón. The majority fails to mention that the State indeed argued at oral argument that Baldón was wrongly decided and Fourth Amendment precedent — Knights— should be followed. Yet, the majority has no hesitation finding broader restrictions on police searches under the Iowa Constitution, even though Short made no such argument in the district court. To reach that issue, the majority must find that Short’s trial counsel was ineffective. I disagree that his trial counsel was ineffective for failing to foresee our court would depart from Knights, a unanimous decision of the United States Supreme Court directly on point and widely followed by other state supreme courts without any academic criticism. We do not require criminal defense counsel to be clairvoyant. See Millam v. State, 745 N.W.2d 719, 722 (Iowa 2008).

. Today’s majority claims Cullison was decided under the Iowa search and seizure clause because article I, section 8 is mentioned in the defendant’s brief in that case. That brief was not appended to the opinion. Do we now expect lawyers to discover hidden rulings in our opinions published a generation ago based on a citation in an archived brief, akin to archeologists finding a long-lost temple in the jungle?

. Would today’s majority prohibit a warrant-less search of the home of an offender serving a sentence under house arrest with an ankle bracelet monitor as an alternative to incarceration in a state penitentiary or county jail? If so, will that discourage use of home confinement and encourage incarceration, at greater loss of liberty and taxpayer expense?

. See, e.g., State v. Raines, 383 Md. 1, 857 A.2d 19, 21, 27-34 (2004) (applying Knights framework and concluding Maryland DNA Collection Act is constitutional under both the United States and Maryland Constitutions); State v. Anderson, 733 N.W.2d 128, 140 (Minn.2007) ("The Supreme Court's decision in Knights does not appear to be a sharp or radical departure from its previous decisions or a retrenchment on its Fourth Amendment jurisprudence with respect to probation searches. Moreover, we are not convinced that federal precedent inadequately protects our citizens’ basic rights and liberties.”); State v. Moody, 334 Mont. 517, 148 P.3d 662, 667, 668 (2006) (citing Knights favorably and concluding, under Montana Constitution, “home visits, as a routine and reasonable element of supervising a convicted person serving a term of supervised release, are not searches and are thus not subject to the reasonable cause standard”); State v. Baca, 135 N.M. 490, 90 P.3d 509, 519, 520 (N.M.Ct.App.2004) (stating “our review of Griffin and Knights reveals no flaws” and noting "[i]n New Mexico, as well, whether a search is unreasonable is determined by balancing the degree of intrusion into a probationer’s privacy against the interest of the government in promoting rehabilitation and protecting society”); State v. Maurstad, 647 N.W.2d 688, 691, 697 (N.D.2002) (following Knights and commenting ”[w]hen reviewing the constitutionality of probationary searches, we have interpreted the North Dakota Constitution to provide the same protections for probationers as provided by the United States Constitution”); State v. Kottman, 707 N.W.2d 114, 120 (S.D.2005) (rejecting argument under state constitution and following Knights ); State ex ret A.C.C., 44 P.3d 708, 712 (Utah 2002) (”[L]ike the United States Supreme Court, we too have stated that whether an individual convicted of a crime has any reasonable expectation of privacy requires a balancing of the government’s interest in operating its institutions and the individual's privacy interest.”).

. The right of the people to be secure in their persons,- houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const, amend. IV.

. The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized.
Iowa Const, art. I, § 8.

. At the time the Iowa Constitution was enacted in 1857, the Fourth Amendment limited only the federal government. See Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652, 657-58 (1914) (applying Fourth Amendment and exclusionary rule to federal officials, but not to municipal police officers), overruled by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). A state constitutional bill of rights patterned after the Federal Bill of Rights was therefore necessary to provide the same limitations against state governmental intrusion on individual civil liberties. The Fourth Amendment was not applied to the states until 1949, when the Supreme Court held the Amendment was incorporated in the Due Process Clause of the Fourteenth Amendment, enacted after the Civil War. Wolf v. Colorado, 338 U.S. 25, 27-28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782, 1785-86 (1949), overruled on other grounds by Mapp, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

.See, e.g., Caballes, 303 Ill.Dec. 128, 851 N.E.2d at 32 (highlighting that the Illinois *512 Constitution’s search and seizure provision "was clearly modeled upon the [F]ourth [A]mendment to the United States Constitution”); State v. Johnson, 293 Kan. 1, 259 P.3d 719, 722 (2011) ("Section 15 of the Kansas Constitution Bill of Rights provides lockstep protection to the Fourth Amendment.”); State v. Johnson, 253 Kan. 356, 856 P.2d 134, 138 (1993) ("Both the Fourth Amendment and § 15 [of Kansas Bill of Rights] prohibit unreasonable searches and seizures. We have held that the wording and scope of the two sections are identical for all practical purposes.”); People v. Nash, 418 Mich. 196, 341 N.W.2d 439, 445 (1983) (“There is no indication that ... the people of this state wished to place restrictions on law enforcement activities greater than those required by the federal constitution. In fact, the contrary intent is expressed.”); State v. Wiegand, 645 N.W.2d 125, 132 (Minn.2002) (recognizing the Fourth Amendment is "textually identical to a provision of the Minnesota Constitution” and therefore United States Supreme Court opinions interpreting the Fourth Amendment are "inherently persuasive”); State v. Havlat, 222 Neb. 554, 385 N.W.2d 436, 440 (1986) ("Nowhere in our independent research of the state constitutional conventions do we find evidence that the framers intended the explicit language of article I, § 7, to encompass more than what it says.”); State v. Felix, 339 Wis.2d 670, 811 N.W.2d 775, 787 (2012) (noting the court is "particularly reluctant” to interpret the state search and seizure provision more broadly than the Fourth Amendment "given the nearly identical language in both provisions”).

. See also Baldon, 829 N.W.2d at 837 (Mansfield, J., dissenting) (collecting "a long line of Iowa Supreme Court cases, many of them rather recent, [that] giv[e] deference to federal interpretations of the Fourth Amendment”); State v. Lowe, 812 N.W.2d 554, 582 (Iowa 2012) (Waterman, J., concurring specially) ("I would be very hesitant to throw aside decades of precedent and create another discrepancy between Fourth Amendment law and how the identically worded article I, section 8 of the Iowa Constitution is interpreted.”); State v. McCoy, 692 N.W.2d 6, 15 (Iowa 2005) ("Because we find no basis to distinguish the protections afforded by the Iowa Constitution from those afforded by the federal constitution under the facts of this case, our discussion of the defendant’s claimed seizure violation applies equally under both constitutional provisions.”); State v. Reinders, 690 N.W.2d 78, 81-82 (Iowa 2004) ("Because the federal and state search-and-seizure clauses are nearly identical, the construction of the federal constitution is persuasive in our interpretation of the state provision.”); State v. Loyd, 530 N.W.2d 708, 711 (Iowa 1995) ("[W]e interpret the scope and purpose of the state constitutional clause to be coextensive with federal interpretations of the Fourth Amendment.”); State v. Strong, 493 N.W.2d 834, 835-36 (Iowa 1992) (" *[T]he language of those clauses is substantially identical and we have consistently interpreted the scope and purpose of article I, section 8, of the Iowa Constitution to track with federal interpretations of the Fourth Amendment.’ ” (quoting Showalter, 427 N.W.2d at 168)); Kain v. State, 378 N.W.2d 900, 902 (Iowa 1985) (“[0]ur interpretation of article I, section 8 has quite consistently tracked with prevailing federal interpretations of the fourteenth amendment in deciding similar issues.”); State v. Groff, 323 N.W.2d 204, 207-08 (Iowa 1982) ("We have often said that where state and federal constitutional clauses contain a similar guarantee they are deemed to be identical in scope, import, and purpose.”); State v. Roth, 305 N.W.2d 501, 507 (Iowa 1981) ("Defendant challenges the search under the Iowa Constitution as well as the United States Constitution, but we see no *513 reason to impose a different rule under the state constitution.”); State v. Davis, 304 N.W.2d 432, 434 (Iowa 1981) ("The Supreme Court of Iowa is the final arbiter of the meaning of the Iowa Constitution, but when the federal and state constitutions contain similar provisions, they are usually deemed to be identical in scope, import, and purpose.”); State v. Olsen, 293 N.W.2d 216, 219 (Iowa 1980) (noting the United State Supreme Court’s interpretation of the Fourth Amendment is persuasive in construing this state’s analogous state constitutional provision). The Ochoa court simply ignored this long line of cases.

. As noted, the deputies obtained a warrant to search Short's residence and telephoned a magistrate upon discovering Short’s new address. The magistrate mistakenly advised that the officer could write the new address on the warrant. The State does not ask us to revisit Cline to find a narrow, good-faith exception to the exclusionary rule under the facts of this case.

. In Pals, the majority held a consent search was involuntary under article 1, section 8 of the Iowa Constitution because the officer failed to tell the motorist he had a right to say *514 no to his request to look in his vehicle. 805 N.W.2d at 783. No such disclosure was required under Fourth Amendment precedent or prior Iowa cases. See id. at 788 (Waterman, J., dissenting). We were taught in grade school that the policeman is our friend. But, the police officer is not the lawyer for a motorist pulled over for suspicion of a crime.

. The same mindset produced today's juvenile sentencing decisions in which our court stands alone at the fringe of Eighth Amendment jurisprudence. See State v. Lyle, — - N.W.2d -, -, 2014 WL 3537026 (Iowa 2014) (Waterman, J., dissenting); id. at-(Zager, J., dissenting); State v. Taylor, - N.W.2d —, — (Iowa 2014) (noting Justices Waterman, Mansfield, and Zager, JJ., dissent without opinion). And, the same mindset earlier allowed this court in a sharply divided opinion to misapply the rational-basis test under the Iowa Constitution to strike down a legislative tax differential that the unanimous Supreme Court, applying the same highly deferential test in the very same case, upheld as constitutional under the Federal Equal Protection Clause. See Racing Ass'n of Cent. Iowa v. Fitzgerald, 675 N.W.2d 1, 6 (Iowa 2004); id. at 16-17 (Carter, J., dissenting); id. at 17-28 (Cady, J., dissenting).

. We invariably scrutinize the evidentiary record to determine whether precedent is factually distinguishable. Federal courts may be divided, or certain issues may be unsettled. And, we may decline to follow precedent found to be plainly erroneous. Precedent may be reexamined in response to intervening changes in the law or other circumstances. Our case-by-case adjudication is never unthinking or predetermined in a way that forecloses such analysis. Neither should our decision-making be untethered from precedent.

. See, e.g., State v. Hunt, 91 N.J. 338, 450 A.2d 952, 955 (1982) (noting “enforcement of criminal laws in federal and state courts, sometimes involving the identical episodes, encourages application of uniform rules governing search and seizure”); State v. Gomez, 122 N.M. 777, 932 P.2d 1, 7-8 (1997) ("[W]e recognize the responsibility of state courts to preserve national uniformity in development and application of fundamental rights guaranteed by our state and federal constitutions.” (Internal quotation marks omitted.)); State v. Flores, 280 Or. 273, 570 P.2d 965, 968 (1977) (considering "the need for a uniform standard in the area of law under discussion” as a factor in its state constitutional analysis); State v. Anderson, 910 P.2d 1229, 1235 (Utah 1996) ("[A]n independent [state constitutional] analysis is not necessarily a different analysis. Indeed, we have endeavored toward uniformity in the application of the search and seizure requirements of the state and federal constitutions, particularly since the respective provisions are practically identical.... 'One untoward consequence of [the opposite] approach is to impose two different and possibly conflicting constitutional standards on law enforcement officers.' ”) (Citation omitted.) (quoting State v. Poole, 871 P.2d 531, 536 (Utah 1994) (Stewart, J., concurring)); see also Lawrence Friedman, The Constitutional Value of Dialogue and the New Judicial Federalism, 28 Hastings Const. L.Q. 93, 103 (2000) (following federal precedent "is justified, at least in regard to the enforcement of the criminal law, by an interest in uniformity, which urges the development of identical state and federal rules to control government conduct in regard to procedural issues”).

. I disagree with the majority's contention that federal courts have "diluted” Fourth Amendment protections. The majority relies on dissenting opinions and commentators for that view, which is belied by the unanimous decision this term holding police generally must obtain a warrant before searching a smart phone seized incident to a lawful ar *517 rest. See Riley v. California, - U.S. -, -. 134 S.Ct. 2473. 2495. 189 L.Ed.2d 430 (2014).

. See also Kerrigan v. Comm'r of Pub. Health, 289 Conn. 135, 957 A.2d 407, 421 (2008) (detailing six factors "to be considered in construing the contours of our state constitution so that we may reach reasoned and principled results as to its meaning’’); Hunt, 450 A.2d at 965-67 (Handler, J., concurring) (using seven divergence criteria to analyze state constitutional provisions); Flores, 570 P.2d at 968 (utilizing four criteria from Johansen’s New Federalism note and adding a fifth: "the need for a uniform standard in the area of law under discussion”); Commonwealth v. Russo, 594 Pa. 119, 934 A.2d 1199, 1205 (2007) (listing four criteria for “a principled consideration of state constitutional doctrine”); State v. Jewett, 146 Vt. 221, 500 A.2d 233, 236-38 (1985) (reviewing various approaches to independent state constitutional adjudication); State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 812-13 (1986) (articulating six divergence criteria); Robin B. Johansen, Note, The New Federalism: Toward a Principled Interpretation of the State Constitution, 29 Stan. L.Rev. 297, 298 (1977) (identifying “four factors a state supreme court should consider in making a principled interpretation of the state constitution").